THOMPSON et al. v. PITTS.     (No. 7896.)

Court of Civil Appeals of Texas. San Antonio. Jan. 11, 1928.

Rehearing Denied Feb. 20, 1928.

1. Fraud ⬤═35 — Purchasers entering into possession under oral promise of adjustment waived any fraud in connection with substitution of tracts by taking no action for 6 years.

Where vendor substituted an inferior tract of land for parcel bought by purchasers and purchasers entered into possession of substituted tract under oral promise of adjustment by vendors, remaining in possession for more than six years before charging fraud, purchasers thereby waived any fraud in connection with substitution of original tract.

2. Appeal and error ⬤═917(1)—Allegations of pleading on appeal are taken as true and every reasonable intendment indulged in favor of pleading on general demurrer.

Where general demurrer to pleading is sustained, its allegations will be taken as true

on appeal, and every reasonable intendment is indulged in favor of pleading.

**3. Mortgages ⬅=⊃372(1)—Vendor and purchaser ⬅=⊃42—Property passing to innocent purchasers after original purchaser waived alleged fraud passed back to original vendor and to purchaser under foreclosure free of fraud.**

Where purchasers waived fraud of vendor in substituting other land for land purchased by continuing in possession under promise of adjustment, property after passing through chain of conveyances to several vendees innocent of fraud passed back to original vendor free from any taint of fraud, and purchaser under foreclosure of original purchaser's trust deed acquired valid title, though taken through original vendor, and though such purchaser knew of alleged fraud.

**4. Mortgages ⬅=⊃372(1)—Purchaser on foreclosure of deed of trust held chargeable with notice of recorded instruments on which he was justified in acting.**

Purchaser of land sold under deed of trust executed by original purchaser was chargeable with notice given by recorded instruments on which he was justified in acting.

**5. Estoppel ⬅=⊃78(3)—Purchaser failing to rescind sale or sue for damages for fraud but entering into new agreement with vendor held estopped thereby to set up fraud against innocent purchasers.**

Purchaser, on discovering fraudulent substitution of one tract of land for another, had remedy of filing suit for rescission or standing on contract of sale and instituting suit for damages, and, on failing to avail himself of either remedy but making new agreement with vendor to adjust matter, purchaser was estopped to set up fraud to prejudice of intervening rights of purchasers innocent thereof.

**6. Contracts ⬅=⊃262—Rescission as well as fraud can be waived.**

Right of rescission as well as fraud can be waived.

**7. Fraud ⬅=⊃35—Suit for fraud is not necessarily waived by waiver of right of rescission.**

Waiver of right of rescission for fraud might not carry with it waiver of suit for damages if that right was exercised in reasonable time.

**8. Fraud ⬅=⊃35—Purchaser, entering into new contract as to vendor's fraud in substituting lots, waived damages.**

Where purchaser after discovering fraudulent substitution of one tract of land for another entered into new agreement with vendor for possession of substituted tract, damages that might have accrued to purchaser for breach of original contract were lost by entering into new contract.

Appeal from District Court, Hidalgo County; J. E. Leslie, Judge.

Action by C. W. Pitts against J. H. Thompson and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Dawson, Hill & Walker and W. R. Blalock, all of Mission, for appellants.

Henry D. Lauderdale, of Mercedes, for appellee.

FLY, C. J. Appellee instituted an action of trespass to try title against J. H. Thompson and L. B. Thompson, to recover land described as farm tract No. 2205, out of the North Capisallo district subdivision of the Llano Grande grant in Hidalgo county. Appellants answered by general demurrer and plea of not guilty, and further alleged that they were induced to come to Hidalgo county by the Stewart Farm Mortgage Company and were shown a desirable parcel of land by said company, and the same was purchased by appellants, and afterwards a deed by said company and notes for part of the purchase money were sent to them, and the notes were executed by appellants. Several months afterwards appellants, who resided in Kansas, returned to Hidalgo county, and upon going upon the land described in the deed discovered that it was not the land purchased by them, but was a much less valuable and desirable parcel of land. They immediately protested to the mortgage company, and its agents promised an adjustment if appellants would accept the land described in the deed. They went into possession of the land in November, 1920. They alleged that the land actually bought by them was of the reasonable market value of $300 per acre, and the land conveyed to them was of the value of $100 an acre, and they claimed damages in the sum of $7,096. The amount of the notes executed by them amounted to $1,774 and were payable to the Stewart Farm Mortgage Company and secured by a deed of trust on the land. They pleaded open, peaceful, and notorious possession and use of the land from November, 1920, until December 21, 1926, when this suit was filed. It was alleged in the answer that no adjustment as to the change of parcels of land was made by the mortgage company; that on May 10, 1922, P. W. Baron, the trustee in the deed of trust, resigned. On September 25, 1920, the mortgage company assigned the notes to the Missouri State Life Insurance Company, and that company, on February 1, 1924, assigned the five notes to the Rio Grande Land &. Irrigation Company, and on November 1, 1925, the company last named appointed M. R. Beamer substitute trustee in place of Baron, resigned. On December 1, 1925, Beamer, as trustee, executed a deed to the land to the American Rio Grande Land & Irrigation Company, and on the same day the last-named company conveyed the land to the Stewart Farm Mortgage Company. On August 24, 1926, R. B. Creager, who has been appointed receiver for the mortgage company estate, conveyed the land to C. W. Pitts, ap-

---

⬅=⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

pellee herein. Appellants tendered payment of the notes and prayed for damages in the sum of $7,096, for a cancellation of the vendor's lien and a removal of cloud from their title. The cause was heard by the court without a jury, and judgment was rendered in favor of appellee for the land and for rent amounting to $710, after a general demurrer to the answer of appellants had been sustained by the court.

The substitute trustee, acting under the terms of the deed of trust, sold the property in dispute on December 1, 1925, and it was not alleged by appellants in their answer that they were not fully notified of the contemplated sale and of the actual sale of the property, nor is it indicated that they offered any objection to the sale or made any effort to prevent it or to have it set aside. For over a year they acquiesced in the sale, and neither demanded a rescission of the original sale or set up any claim for damages. For six years they remained in possession of the lot of land in controversy and made no effort to obtain the parcel of land they claim they purchased, nor to collect any damages arising from the substitution of an inferior tract of land for the parcel bought by them. They indefinitely and inconclusively allege that an adjustment was promised by the mortgage company, but made no effort, in six years, to compel the adjustment, whatever it may have been. What that contemplated adjustment was appellants did not disclose, and it may be inferred from their pleading that they did not know how or in what way the matter was to be adjusted. While they sat supinely by, the intervening rights of others were coming into existence.

[1] The promise of adjustment was an oral one, and under it appellants entered into possession of the substituted tract, thereby waiving any fraud in connection with the substitution, and for six years no effort was made to obtain the adjustment. There was no record, no suit to place any person desiring to purchase the land, on notice that some adjustment was due appellants or that Stewart Farm Mortgage Company had been guilty of fraud. The possession of appellants, instead of being notice that fraud had been committed, would indicate a possession under a duly executed deed, and the trust deed showed that the purchase money had not been paid. There is no allegation that any of the several vendees knew about the fraud, which had been destroyed by the acts of appellants, except the irrigation company and appellee, and as to them what would arise from the possession of appellants.

[2] The first proposition utters a truism that when a general demurrer to a pleading is sustained its allegations will be taken as true, and further than that every reasonable intendment is indulged in favor of the pleading. We have considered the pleadings of appellants in the light of that rule.

[3, 4] The second and third propositions are overruled. If the Stewart Farm Mortgage Company was guilty of fraud in substituting the last lot for the one purchased, appellants agreed to make an adjustment about the matter and went into possession of the substituted lot, and remained in possession for more than six years before charging fraud and thereby waived any fraudulent act in connection with the original lot. Such being the case, when the property came through a chain of conveyances to the mortgage company, it could not come back charged with any equities in favor of appellant. The property passed back to the mortgage company just as free of any taint of fraud as though it had never existed. Appellants substituted a new contract for the one alleged to have been tainted with fraud. If appellee knew all that appellants knew about the alleged fraud and appellants' waiver of it, it would not have impaired or invalidated his title, although it came back to him through the mortgage company. No purchaser of the land could have any notice of any adverse possession when there was on record a deed of trust executed by appellants and under and by virtue of which the land was sold. Not one of them could know of any fraud committed by substituting one lot for another, and if appellants had been asked about the matter they would, if they told the truth, have informed the inquirer that they were in possession under an agreement with the mortgage company, which effectually destroyed any fraud theretofore perpetrated. Ramirez v. Smith, 94 Tex. 184, 59 S. W. 260; Eylar v. Eylar, 60 Tex. 315. Actual knowledge of everything charged by appellants as to the fraud of the mortgage company would not invalidate any of the mesne conveyances back to the mortgage company. Appellee was under no obligation to prove that he had consulted the record of deeds, and, if he had, it would not have increased or diminished his duty to take notice of possession of the property by appellants. The law charged him with the notice given by the recorded instruments, and on those he was justified in acting.

[5] When appellants discovered the fraudulent substitution of one tract of land for another, two remedies were open to them: To file a suit for rescission, or stand on the contract of sale and institute a suit for damages. They did not seek to avail themselves of either remedy, but made a new agreement with their vendor by which everything was forgiven, if not forgotten. They are estopped to set up such fraud after such an agreement upon which they openly acted. They remained silent for years while their notes were being passed in due course of trade from one person to another, when the trustee sold the land and executed a deed to meet the amounts of the notes, and while the land was passing from one purchaser to another. They kept

silent when they should have spoken, and equity and good conscience demand that they be not heard when the rights of others will be jeopardized by their disclosures. The fourth and fifth propositions are overruled.

[6-8] The authorities support the proposition that the right of rescission as well as fraud can be waived. Scarborough v. Arrant, 25 Tex. 129; Moore v. Giesecke, 76 Tex. 543, 13 S. W. 290; Kempner v. Thresher Co., 54 Tex. Civ. App. 650, 118 S. W. 714; Trauzettel v. Kjellman (Tex. Civ. App.) 163 S. W. 689; Kallison v. Poland (Tex. Civ. App.) 167 S. W. 1104; Winters v. Coward (Tex. Civ. App.) 174 S. W. 940. As said by this court in the case last cited:

"The remedy of rescission and cancellation is no prime favorite of courts, and slight circumstances, tending to show a purpose or intent upon the part of the person seeking a rescission to waive such right, will prevent the granting of the relief. The right of rescission is one that can be waived, and, when waived, the rights of the parties are placed upon a new basis."

The waiver of the right of rescission might not carry with it a waiver of a suit for damages if that right was exercised in a reasonable time. Whatever damages may have accrued to appellants upon the breach of the original contract were lost by appellants' entering into a new contract, which changed the measure of damages from the difference in value of the two lots, to the amount that might accrue under that indefinite adjustment mentioned by appellants in their answer. They did not seek to recover damages by reason of the contract to adjust, but under the original contract, and they had waived that measure of damages.

The judgment will be affirmed.