## MINNEAPOLIS–MOLINE POWER IMPLE-MENT CO. v. GATZKI et al.

### No. 1065.

Court of Civil Appeals of Texas. Eastland.

Feb. 10, 1933.

Smithdeal, Shook, Spence & Bowyer, of Dallas, for appellant.

Wheat & Wheat, of Seymour, for appellees.

FUNDERBURK, Justice.

Minneapolis-Moline Power Implement Company brought this suit against F. Gatzki and Walter Gatzki to recover upon certain notes given by the latter for part of the purchase price of one model B combine, and to foreclose two mortgages given at different times to secure said notes. The defendants, conceding plaintiff's right to recover, except as same might be defeated by matters of defense alleged by them, averred that the sale of the combine to them and their execution and delivery of the notes had been procured by means of false representations made by the agents of the plaintiff, by reason whereof defendants had elected to rescind the transaction. They claimed the return of $125 paid as cash on the purchase price, and prayed for cancellation of the notes and mortgages.

The false representations, each of which were found by the jury to have been made by the agents of plaintiff, acting within the scope, or apparent scope, of their authority, and to have been untrue and relied upon by the defendants, were as follows: (1) That said combine was a good machine and would satisfactorily harvest all kinds of grain grown on defendants' farm; (2) that high speed chain idler bearings, canvas drive sprocket bearings, real drive sprocket bearings, and sickle drive shaft bearings were roller bearings of high type; (3) that said combine would harvest from 35 to 50 acres of grain per day with a minimum trouble; (4) that said combine would be fully equipped for use, equipped with a full set of tools, and an instruction book; (5) that the motor on said combine would not heat excessively to such an extent, under proper use, as to necessitate stops in the operation of said combine.

A part of the defendants' answer was as follows: " * * * That the agent Moore came to Westover * * * and the defendants * * * told Moore that the machine for which they had contracted was wholly unsatisfactory, and *not as represented to them,* and that they would not pay for same, and they then and there tendered the machine to the plaintiff company at Westover through Moore and sought to rescind their contract of purchase. But Moore then on behalf of the plaintiff company, prevailed upon these defendants to *keep the said machine on the promise that* all defective parts would be replaced, all defects repaired, all necessary parts and equipment supplied, and the machine put in perfect working order before the next harvesting season. * * * These defendants would further show that at sometime before the start of the 1931 season, one Lee, a representative of the plaintiff company, came to them and again represented and *promised* to the defendants that the machine

would be repaired and properly equipped before time for harvest, and that Lee told F. Gatzki that it was necessary for his company to have 'paper' in order to discount it and raise money, and that it was certain that his combine would be properly fixed before the season and F. Gatzki, relying upon the statements of Lee, executed the mortgage on 100 acres of wheat as described in the plaintiff's original petition," etc. (Italics ours.)

The appeal is from a judgment awarding defendants recovery of $125, and canceling the notes and mortgages, and denying plaintiff recovery upon the notes.

■ That part of the defendants' pleading above quoted shows, as a matter of law, a waiver on the part of defendants of any right that they may have had to rescind the contract of sale because of the alleged false representations. It is thus shown that, with full knowledge of the alleged fraud, and after defendants had given notice of their election to rescind, they agreed to keep the combine and one of the defendants gave a mortgage upon 100 acres of wheat as additional security for the purchase-money notes, all in consideration of certain promises. No facts were alleged to show that these promises were fraudulent. The most that was alleged concerning them was that they were not performed. The applicable rule of law is stated in Tex. Jur., as follows: "The right to rescind a contract or to sue for damages on account of fraud may be waived when the defrauded party, with full knowledge of the imposition practiced, has entered into and executed a new agreement by which the rights of the parties are adjusted." 20 Tex. Jur., p. 110, § 73; Thompson v. Pitts (Tex. Civ. App.) 2 S.W.(2d) 899; Spark v. Lasater (Tex. Civ. App.) 234 S. W. 717; Elliott v. Clark (Tex. Civ. App.) 172 S. W. 560; Weeks v. Stevens (Tex. Civ. App.) 155 S. W. 667; Miller v. Layne & Bowler Co. (Tex. Civ. App.) 151 S. W. 341; Damants v. B. F. Ditmar Co. (Tex. Civ. App.) 50 S.W.(2d) 926. "In such case," says the same authority, "the defrauded party must recover on the contract made in settlement of the fraud. In other words, the fraud is not waived but the parties simply contract against it, and it is the contract that must be enforced." Id. Dibrell v. Central National Bank (Tex. Civ. App.) 293 S. W. 874. Although by the new agreement the fraud may not have been waived, the rights of the parties with reference thereto simply having been fixed by the terms of the agreement, yet the right of *rescission* because of the fraud was waived. We again quote from Tex. Jur., as follows: "The authorities are uniform in holding that, if the defrauded party acquires full knowledge of the fraud and his rights in respect thereto, while the contract remains executory, and thereafter does any act in affirmance of the contract, he thereby condones the fraud and waives his right of action." 20 Tex. Jur., p. 106, § 69; Cattlemen's Trust Co. v. Pruett (Tex. Civ. App.) 184 S. W. 716; Kiehn v. Willmann (Tex. Civ. App.) 218 S. W. 15; Klyce v. Gundlach (Tex. Civ. App.) 193 S. W. 1092; Patterson v. McMinn (Tex. Civ. App.) 152 S. W. 223; Reed v. Holloway (Tex. Civ. App.) 127 S. W. 1189; Koppe v. Koppe, 57 Tex. Civ. App. 204, 122 S. W. 68. The "right of action" which, in such case, he waives, is that for rescission, of course, and not necessarily such as he may have for damages for the fraud. As further said in Tex. Jur., "At least, affirmance or ratification of the contract or transaction with knowledge of the fraud, defeats the right to rescission or to defend, on the ground of fraud, against the enforcement of the contract." 20 Tex. Jur. 106. There would be no waiver of a right of action for damages for the fraud by a mere affirmance or ratification of the contract, but a new contract capable of enforcement is not only an affirmance or ratification of the original contract, but at the same time becomes the source and measure of the rights of the parties.

■ From the conclusions stated, it results that all the questions presented upon this appeal relative to fraud or warranties, or the manner of submitting issues in reference thereto, are immaterial. It appears upon the face of the record that the issues found by the jury and the judgment of the court in conformity thereto have reference exclusively to a cause of action which the pleadings affirmatively show had been waived, and therefore did not exist.

■ In view of another trial we call attention to the fact that, as bearing upon the existence of the new contract which we have held was a waiver of any right of rescission, the defendants offered in evidence a letter, as follows:

"Westover, Texas, 4/30/31

"Mr. F. Gatzki, Westover, Texas.

"Dear Sir: This is to advise you that, having this day been furnished with crop mortgage covering 100 acres of wheat as additional security for payment of your combine notes, this company will, before the 1931 harvest, repair and put in good condition your Model B combine, and, if necessary, furnish service man when beginning to operate said next harvest.

"Yours truly,

"M. S. Lee."

It would thus appear that the new contract was in writing and consisted of the mortgage and above letter. While the contract on its face appears to be between Lee and F. Gatzki, the statement of facts shows that it was ratified by the plaintiff, and the record further suggests, if it does not compel the inference, that F. Gatzki was acting for Walter Gatzki as well as himself. If

the agreement of plaintiffs to "repair and put in *good condition*" said combine "before the 1931 harvest" was breached, and by reason whereof the defendants sustained damages, we see no reason why the defendants may not recoup such damages as an offset to their liability upon the notes.

For the reasons given, it is our opinion that the judgment of the court below must be reversed and the cause remanded, which is accordingly so ordered.