**DAVIS v. JARNIGAN et al.**
**No. 1072.**

Court of Civil Appeals of Texas. Eastland.
March 29, 1933.

Rehearing Denied April 7, 1933.

J. D. Barker, of Cisco, for appellant.

Stinson, Hair, Brooks & Duke, of Abilene, for appellees.

LESLIE, Justice.

G. S. Jarnigan and H. Feagan sued G. F. Davis, a road contractor, for moneys alleged to be owing to them by him for road work under subcontracts. They sued for $2,291.87 road work in Jones county, $912.19 road work in Wise and Parker counties, $500 attorney's fees, and $2,500 damages alleged to have been sustained by them in that Davis caused them to move their teams and road-working equipment from Jones to Parker and Wise counties before the right of way was procured, thus delaying their work and damaging them in said amount.

The defendant answered by general denial, plea of settlement, and in cross-action sought to recover against the plaintiffs on their promissory note in the sum of $2,191.87, alleged to have been executed and delivered to him in settlement of their accounts.

By a verified supplemental petition the plaintiffs denied the allegations of the defendant's answer and specially alleged that the note for $2,191.87 was left with the defendant for a special purpose, and that it did not represent any unconditional obligation. In this respect they alleged that a dispute arose between them and the defendant concerning the alleged indebtedness by one to the other; that they were unable to agree on such matters; that the defendant had possession of their teams and road-construction equipment and refused to surrender them to plaintiffs; that they had entered into a contract to grade and excavate roads in Brown county, and had agreed to begin the work at a specified time, and were unable to gain possession of their teams and equipment; that, in order to release them, they executed the note in question and left it with the defendant under a separate and contemporaneous agreement and understanding that if the state engineer's estimates (not then at hand) later disclosed that the defendant owed him (as they contended) that the defendant should pay same and return the note, and that, on the other hand, if such estimates disclosed that the plaintiffs owed the defendant, they would pay the same, and be entitled to the return of the note. That is, the note passed into the hands of Davis for the special purpose to obtain the release of teams, etc., and to be held pending definite ascertainment of status of accounts between the parties.

Such, we think, is the reasonable construction of the plaintiffs' pleading, which, in that respect, is as follows:

"Plaintiffs allege and say in answer to defendant's answer set out in Paragraphs 8 and 9, wherein the defendant alleges that plaintiffs executed and delivered to said defendant one certain promissory note in the sum of $2191.87, is not due and owing by these plaintiffs to said defendant, all of which was well known to said defendant at the time said note was executed by these plaintiffs and that said note was executed and delivered to said defendant herein under the following circumstances:

"That these plaintiffs under said contract and agreement of putting up the road in Wise and Parker Counties, Texas, to perform the work and complete the road in accordance with said contract and agreement and after these plaintiffs had finished and completed said work and road that the said defendant would permit them to complete, and after the state engineer had in all things approved and confirmed their work these said plaintiffs had obtained another contract for the putting up of another road in Brown County, Texas, which was well known to the defendant, and that they proceeded to have a settlement with said defendant on all their work done and performed in Jones, Parker and Wise counties, Texas, and the said defendant contended at said time that these plaintiffs were due and owing the said defendant sums of money, which they did not owe, and that these plaintiffs at said time desired to move all of their teams and tools from Wise and Parker County, Texas, to Brown County, Texas, and the said defendant objected and refused to permit these plaintiffs to move their teams and tools from Wise and Parker Counties, Texas, from the job which they had completed for said defendant, and told these plaintiffs that unless they did execute to the defendant the note herein mentioned and set out that they could not move their teams and tools. That at said time these plaintiffs, acting herein by H. Feagin, steadfastly insisted with the de-

fendant that he did not owe him anything and that when the final estimates came in from the building of Parker and Wise Counties, Texas, as well as the Jones County job, it would show that he, the defendant was due and owing these plaintiffs sums of money in excess of the amount claimed by the defendant that the said plaintiffs owed the said defendant. But notwithstanding the statements of said Feagin to the said defendant contended and persisted that unless the said plaintiff would execute said note set out and mentioned in the defendant's said answer the said plaintiffs could not move their teams and tools and that he would keep the same until said note was executed by the said plaintiffs.

"The said plaintiffs herein informed the said Davis, defendant herein, that they had contracted to put up some road in Brown County, Texas, and that unless said teams and tools were released and they got on the job that they would lose large sums of money and would forfeit their contract and agreement with the parties in Brown County, Texas, and these plaintiffs say that said statements were true and all of which were known to be true by the said defendant herein, but the said defendant continued to insist that he would not under any circumstances let the said plaintiffs move said teams and tools until said note was signed and the said defendant herein promised and agreed with the plaintiffs herein that if they would execute the note for $2191.87 set out and described in the defendant's said answer herein, that when the final estimate was had for the work done on the Jones, Wise and Parker Counties jobs, if it was then determined that the said plaintiffs did not owe the said defendant anything that he would cancel the note and return it to these plaintiffs and would pay them any balance that was due and owing them under their said original contracts and that these plaintiffs, under said circumstances and agreements, made, executed and delivered said note for said sum of $2191.87, and after the execution and delivery of said note, the final estimates were had on the Jones County job as set out and alleged in plaintiffs' petition, and it was determined that the said defendant herein was due and owing these plaintiffs a balance of $2291.95.

"That after the execution and delivery of said note by the plaintiffs herein to the defendant final estimates were had on the Wise and Parker County jobs, as set out in plaintiffs' petition, and that there was due the plaintiffs for said Wise and Parker County jobs the sum of $5119.37, as set out in plaintiffs' petition and that the said plaintiffs then and often thereafter insisted with the said defendant to have a settlement of all of their work done and labor performed in keeping with their original contract and agreement but the said defendant failed and refused to do so and failed and refused to cancel and return the plaintiffs' said note in the sum of $2191.87, and that in the execution and delivery of said note, as hereinbefore mentioned and set out in the sum of $2191.87, there was no consideration moving between the parties and that the consideration for which said note was executed has wholly failed and that there is a total failure and lack of consideration for the execution and delivery of said note in the sum of $2191.87, all of which the said defendant had due notice."

Trial was before the court and jury, and in response to the issues the jury found: (1) That at the date of the execution and delivery of the note for $2,191.87, a bona fide dispute existed between plaintiffs and defendant as to any balance due by plaintiffs to defendant; (2) that at time of execution of the note plaintiffs and defendant did not agree that the former owed the latter $2,191.87; (3) that plaintiffs and defendant, at said date, did not have accounts stated between them of respective claims listed in pleadings; (4) that plaintiffs excavated and moved 55,240 cubic yards of dirt for defendant on the Jones county job; (5) that plaintiffs did for defendant 182½ hours of blading on said road; (6) plaintiffs were not overpaid by defendant for the Jones county work; (7) plaintiffs did not agree that bills paid by defendant to one Carlton were proper charges against them; (8) that defendant Davis owed plaintiffs a balance of $1,311.14 on the Jones county job; (9) he owed them no balance on the Parker and Wise county work; (10) that plaintiffs were damaged $440 by defendant's failure to obtain right of way in Parker county before moving them to that place; (11) that plaintiffs sustained no loss in moving teams, etc., from one point to another in Parker county.

Based on this verdict the court entered a judgment in favor of plaintiffs against the defendant for the sum of $1,311.14, and otherwise, in accordance with the verdict, except as to the item of $440, as to which judgment was rendered in favor of the defendant.

■ Proposition 1 complains that the court erred in admitting testimony to the effect that the plaintiffs were damaged by the defendant's moving them to Parker and Wise counties before the right of way was procured, thereby causing them unnecessary expense and delay. The second proposition is that the court erred in refusing to exclude the testimony, on motion of the defendant. All of this testimony related to the $440 item of damages, and since the judgment on that item is in favor of the defendant and is not complained of by the plaintiffs, these propositions are overruled. For the same reason proposition 3 becomes immaterial.

■ Propositions 4 and 5 are to the effect that the court committed "fundamental error"

in permitting the plaintiffs to offer testimony to establish the alleged contemporaneous parol agreement entered into at the time of the execution and delivery of the note. The contention is that the effect of such evidence was to ingraft upon a written instrument a contemporaneous parol agreement and that it did not establish "failure of consideration," etc.

These propositions are overruled. The action was between the immediate parties to the note, and the evidence was admissible to show that the note, though absolute in form and delivered to the manual possession of the payee, was delivered for a special purpose and not intended to take effect as a binding obligation or as a complete and final settlement between the parties, but was for holding by Davis to abide the results of the engineer's estimates and the accomplishment of the special purpose. The suit was in effect a final settlement and adjustment of all claims by the respective litigants growing out of the road work as a whole in Jones, Jack, and Parker counties. All phases of their mutual undertakings and obligations in that matter were explored, and issues covering all contentions submitted to the jury, with the result that a finding was made that the defendant owed the plaintiffs an unpaid balance of $1,311.14 on the Jones county job. Other issues were resolved in favor of the plaintiffs, and some of them in favor of the defendant. Instead of finding that the note was given in settlement of an amount agreed to by the plaintiffs as due the defendant, the verdict is that there was a dispute in that matter, and that the plaintiffs did not agree that they owed the defendant the amount specified in the note. The verdict as a whole means that at the date of the note plaintiffs owed the defendant nothing, but that he in fact owed them, which they at all times contended. In fact, the case in its fundamental features is the same as that disposed of in the case of Roddy et al. v. Citizens' State Bank (Tex. Civ. App.) 11 S.W.(2d) 652, 653, wherein the trial court, upon objections, excluded testimony similar to that here admitted, and which action of the court was held to be error. The contention was there disposed of in this language:

"The excluded testimony tended to support defendants' theory; that is, that the notes were signed for a special purpose, with the understanding that an accounting would be had later, and all errors, if any existed, corrected and the notes reduced to correspond. This evidence, in our opinion, should have gone to the jury for what it was worth.

"The Negotiable Instrument Act, art. 5932, § 16, in part, reads as follows: '* * * As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or endorsing, as the case may be; and in such case the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument. * * *'

"In the case of Waters v. Byers Bros. & Co. (Tex. Civ. App.) 233 S. W. 572, 588, this provision was under construction and Judge Boyce, for a majority of the Amarillo court, expressed the view that the statute made no material change in the rule as it existed at common law.

"The common-law rule was concretely and clearly stated by Judge Key in Hawkins v. Johnson (Tex. Civ. App.) 181 S. W. 563, as follows: '* * * The weight of authority seems to support the proposition that parol evidence is admissible for the purpose of showing that a promissory note, though absolute in form, and delivered to the manual possession of the payee, was not intended to take effect as a binding obligation until the happening of a stipulated contingency. (Citing authorities.)'

"The case of Allen v. Herrick Hdwe. Co., 55 Tex. Civ. App. 249, 118 S. W. 1157, is in point. Suit was by the payee against the maker on a note, who set up a contemporaneous verbal agreement to the effect that there was to be an accounting at a later date between the parties, and, if this disclosed that the note was in excess of the maker's indebtedness, proper credit would be entered. The court said this plea set up a valid equitable defense and that evidence to support same did not vary or contradict the terms of the note, because it was not intended that the note should be a complete and final settlement. This is the doctrine, both at common law and under the Negotiable Instrument Act, of the following authorities: Meeks v. Holmes Commerce Co. (Tex. Civ. App.) 154 S. W. 365; Williams v. Walter A. Wood Mowing & Reaping Mach. Co. (Tex. Civ. App.) 154 S. W. 366; Street v. J. I. Case Threshing Mach. Co. (Tex. Civ. App.) 188 S. W. 725, 726, 727; Exum v. Mayfield (Tex. Civ. App.) 297 S. W. 607; Burke v. Dulaney, 153 U. S. 228, 14 S. Ct. 816, 38 L. Ed. 698; Union Investment Co. v. Epley, 164 Wis. 438, 160 N. W. 175; 22 C. J. 1148, § 1540. Also for a full annotation see 20 A. L. R. 421, 502."

This opinion and the authorities therein cited rule the instant case, and in point with them we cite the recent case of Rector v. Evans, 6 S.W.(2d) 105, by the Commission of Appeals and expressly approved by the Supreme Court. See, also, Helmke v. Prasifka (Tex. Civ. App.) 17 S.W.(2d) 463 (writ refused) and Pope v. Hennessey (Tex. Civ. App.) 38 S.W.(2d) 834. It is not governed by Chalk v. Daggett (Tex. Com. App.) 257 S. W. 228, 230. That case is distinguishable on the facts

from this one. The court rendering that opinion said of the case: "In the present case, however, the answer alleges not only that the note involved in this point was delivered but that it was given, and was intended to be endorsed, to a bank in order to obtain money to pay off a judgment against the parties, and that thereafter, according to the contemporaneous agreement, it was only to be paid upon condition, or, it may be, was not to be paid at all."

By the sixth proposition the defendant asserts that: "It was fundamental error * * * for the court to fail to submit to the jury the ultimate controlling issues so that when answered by them the court could base a judgment thereon, disposing of the appellant's cross-action." The contention is built on that portion of article 2190, R. S., as amended by Acts 1931, c. 78, § 1 (Vernon's Ann. Civ. St. art. 2190), which provides that, when a court submits a case on special issues, "he shall submit all the issues made by the pleading." However, that article further provides that: "Failure to submit an issue shall not be deemed a ground for reversal of the judgment, unless its submission has been requested in writing by the party complaining of the judgment." No such request appears to have been made in the trial court, and no point made on its omission. In this situation any ultimate issue presented by the cross-action was waived. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084, Speer's Law of Special Issues, p. 413, § 299. However, we are of opinion that the issues submitted, taken together and properly construed, amount to a fair submission of all material issues presented by the respective litigants. The proposition is overruled.

By the eighth proposition the appellant contends that the court erred in entering the judgment on the verdict for the reason that same was incomplete and did not dispose of the ultimate issues. From the viewpoint of the defendant the verdict sufficiently supports the judgment, and the proposition is overruled.

Other points become immaterial, and for the reasons assigned the judgment of the trial court is affirmed.

FUNDERBURK, Justice (dissenting).

Plaintiffs' suit was for balances claimed to be due upon two certain contracts for road work, one dated February 24, 1930, and the other June 2, 1930. The petition made no mention of any subsequent contract or agreement, or the execution of the $2,191.87 note. Defendant's answer, among other things, alleged an overpayment on said contracts of $2,207.53; that about December 4, 1930, when a settlement was attempted, there was a bona fide dispute regarding the state of the accounts growing out of said contracts, which was settled by the plaintiffs' executing to defendant the note for $2,191.87. By way of cross-action defendant alleged a cause of action against plaintiffs on the said note and prayed for judgment thereon. By supplemental petition plaintiffs alleged, in reference to said note, among other things, an agreement as follows: "And the said defendant herein promised and agreed with the plaintiffs herein that if they (that is, plaintiffs) would execute the note for $2191.87 set out and described in the defendant's said answer herein, that when the final estimate was had for the work done on the Jones, Wise and Parker Counties jobs, if it was then determined that the said plaintiffs did not owe the said defendant anything that he would *cancel* and *return* it to these plaintiffs and would pay them any balance that was due and owing them under their said original contracts and that there plaintiffs, under said circumstances and *agreements*, made, executed and *delivered* said note for said sum of $2191.87." (Italics ours.) It was also alleged that the note was executed to gain permission of defendant for plaintiffs to move their teams and tools to Brown county. The agreement thus alleged would imply that if the final settlement showed that plaintiffs owed the defendant as much as the amount of the note, then said amount would be payable according to its provisions, and if something less than the amount of the note, credit thereon would be given accordingly. It was not alleged that the agreement was made without any intention on the part of defendant to perform it, nor was any other fact alleged to show that the agreement alone did not constitute a valid contract enforceable as such. If valid, such an agreement, of itself, was an all-sufficient consideration for the execution and delivery of the note. It was not alleged, in substance or effect, that said note was delivered for any special purpose, or subject to any condition precedent to its taking effect. All parties agree that when the note was executed and delivered there had been a bona fide dispute and the jury so found. The record shows indisputably, I think, that that dispute was settled by the plaintiffs' executing and delivering the note in consideration of the permission of defendant to the removal of plaintiffs' teams and tools, and in consideration of the promise and agreement of defendant "that when the final estimate was had for the work * * * if it was then determined that the said plaintiffs did not owe the said defendant anything, that he would cancel and return it to these plaintiffs, and would pay them any balance that was due and owing them under said original contracts." This parol agreement could not be proved to show that the note never had any validity. It could only be proved as in itself a cause of action which gives full recognition to the validity of the note. The agree-

ment, I think, if properly construed, was valid and enforceable as a contract, for the reasons discussed in Johnson v. Elmen, 94 Tex. 168, 59 S. W. 253, 52 L. R. A. 162, 86 Am. St. Rep. 845. If so, after the making of such contract plaintiffs no longer had any cause of action upon the original contracts. "If a new contract is substituted by agreement, the original is at an end, and no recovery can be had on it, nor can any action be maintained to cancel or rescind it. Failure to perform a substituted contract does not revive the original one, and the cause of action of the party not in default is upon the new contract and not upon the original." 10 Tex. Jur. p. 375, § 211; Braddock v. Brockman (Tex. Civ. App.) 29 S.W.(2d) 811. Just recently we held this same principle applicable to the substitution of a right of rescission by a new agreement, and that the available cause of action in such case is upon the agreement. Minneapolis-Moline Power Implement Co. v. Gatski, 57 S.W.(2d) 593. Another applicable rule of law is stated thus: "An independent parol agreement which is shown to have been entered into as an inducement to the making of a written contract may be proved and enforced, although it is not referred to in writing." 17 Tex. Jur. p. 826, § 311; Callaway v. Albin, 114 Tex. 5, 261 S. W. 372.

In my opinion plaintiffs sought recovery and the court gave them judgment upon a wrong theory. They had no rights based upon want or failure of consideration for the note. Their own pleadings alleged such a consideration. The only cause of action which plaintiffs really had, as shown by their allegations in the supplemental petition, was one, the validity of which was dependent upon the validity of the note. They were under the necessity of conceding the validity of the note in order to be entitled to prove the verbal contract, and thereby get credit for all or a part of such note by judgment upon their cause of action upon the oral agreement of which the note was the supporting consideration.

But plaintiffs did not sue upon that cause of action. The allegations in the supplemental petition were purely defensive, and in denial of the validity of the note. Even if the pleadings were sufficient, the cause was submitted to the jury on no such theory. As to the cause of action upon which plaintiffs relied for recovery being as it was inconsistent with the validity of the note, the evidence of the contemporaneous parol agreement was subject to the rule stated in 17 Tex. Jur. p. 847, § 383, upon the authority of Chalk v. Daggett (Tex. Com. App.) 257 S. W. 228, and Shaw v. Lumpkin (Tex. Civ. App.) 241 S. W. 220, as follows: "It is not permissible to show a contemporaneous oral agreement that a note for a certain sum, payable at a fixed time, was not to be collectible until there had been an accounting between the parties, and that it was then to be payable wholly or partly in credits to be shown by the accounting." If, on the other hand, plaintiffs had sued upon the agreement made contemporaneously with the execution of the note, thereby giving full recognition to the validity of the note, then such evidence would have been admissible because its effect could not have been to contradict or vary the terms of the note. A failure to recognize this distinction accounts, in my opinion, for a number of decisions, and particularly Pope v. Hennessey (Tex. Civ. App.) 38 S.W.(2d) 834, and Roddy v. Citizens' State Bank (Tex. Civ. App.) 11 S.W.(2d) 652; the last-named two cases being recognized in Tex. Jur. as being in conflict with Chalk v. Daggett, supra, and Shaw v. Lumpkin, supra. See 17 Tex. Jur., p. 847, § 383.

In my opinion, R. S. 1925, art. 5932, § 16, can have no application. What special purpose was it, either pleaded or proved, for which the note was delivered? Was it the purpose of plaintiffs to deliver it as a trick or artifice to induce the defendant to yield his claim of right—apparently recognized by plaintiffs—to prevent the removal of the teams and tools until a settlement was made? I think certainly the special purpose within the meaning of said statute must be some common purpose of the parties. What purpose of interest or possible advantage to defendant, as well as to plaintiffs, did or could the notes serve if the agreement was as alleged by the plaintiffs? It afforded no security for any balance which might be found to be due defendant by the subsequent accounting. It furnished no equivalent advantage for his yielding the claim or right to prevent the removal of the teams and tools. I can conceive of no purpose of any concern to the defendant which the delivery of the note, under the circumstances, served, and the only purpose from the standpoint of the plaintiffs was to induce the defendant to yield his claim of right to prevent the removal of the teams and tools with no compensating advantage whatever.

Plaintiffs had the right, by alleging and proving the cause of action which they, according to allegations in their supplemental petition, really had, to require defendant to comply with his agreement, and by showing that at the time the note was given nothing was due him, to enforce credit of the whole amount of the note and thereby enforce his obligation to "cancel and return" same, not in the sense that it was a void and meaningless thing, but to the contrary, in the sense that by the thus enforced performance of the agreement the note was in effect paid and its consequent cancellation and return the same as a note is cancelled and returned when paid.

In this case the importance of the fact is overlooked or minimized, I think, that the

note was admittedly *delivered*. "A parol condition affecting the payment of a *delivered* (italics ours) instrument is not enforceable if it operates to add to, take from or vary the terms of the writing. Oral evidence is inadmissible to vary an unconditional promise to pay money by showing a prior or contemporaneous parol agreement that the promissor shall not be required to pay, or that it was not absolutely payable, as for example, that it should be payable only upon the performance of a specified condition or the happening of a certain contingency * * *. Nor is it permissible to show an oral agreement reducing the amount stipulated to be paid, as for example, an agreement that a less sum is to be paid upon a certain contingency, or providing for a remission or rebate of a portion of the principal or interest, or a contemporaneous agreement that a joint and several maker of a note was liable for only a part of it." 17 Tex. Jur. p. 844, § 383.

If these well-settled principles of law can be set at naught simply by regarding each case as one in which the parol agreement provides for a conditional delivery or delivery for a special purpose, and that regardless of the fact that no such condition or purpose be shown or even alleged, then it has certainly come to pass that a promissory note, except where the doctrine of innocent purchaser for value applies, is an utterly meaningless thing.

It may be that had the suit been upon the proper cause of action and the issues submitted and determined accordingly, the judgment would not have been much different from what it is; but, giving effect to the note instead of canceling it, and crediting plaintiffs with the amount the jury found they were entitled to, a very different judgment would be required. The issues to the jury become largely meaningless when applied to the proper cause of action, since they were found upon an entirely different theory.