### TEDERS v. MERCANTILE NAT. BANK AT DALLAS.

#### No. 14259.

Court of Civil Appeals of Texas. Dallas.

Dec. 15, 1950.

Rehearing Denied Jan. 12, 1951.

Esir Tobolowsky, of Dallas for appellant.

Cedric G. Hamlin, of Dallas, and Freeman, Wolfe, Milam & Bryant, of Sherman, for appellee.

YOUNG, Justice.

Mercantile National Bank at Dallas instituted this suit against Henry Teders on a check for $4,750 executed by defendant as purchase price of an Adams motor grader, payable to one Bill Moore and Bank and endorsed by the former to plaintiff. After issuance, payment on said check was stopped. Defendant answered by sworn pleading of general denial, accommodation maker, fraud inducing execution of check, total and partial failure of consideration; also denying that plaintiff was a holder in

due course or for value, with additional cross action for damages based on breach of express and implied warranties. Plaintiff responded by general and special denial along with allegations that the only representation made in connection with sale of the motor grader was "Condition—as is, where is"; and further that the damage, if any, was occasioned by inefficient and incompetent operation.

There was a trial to jury with. answers to special issues and motion by defendant for judgment based on the jury verdict, which was overruled. Plaintiff thereafter moved for judgment non obstante verdicto which was sustained and judgment rendered against defendant for $4,750 with credit of $3,429.36, the amount derived from sale of motor grader pending suit by agreement of parties ($4,000 less $570.64, repair bill and brokerage charge); net judgment being a balance of $1,646.82 together with legal interest. From such final order an appeal has been duly taken.

In August 1947, one H. E. Shawver had delivered to Bill Moore at his Equipment Yard, South Lamar Street, Dallas, the Adams Motor grader and dragline, for sale, subject to chattel mortgage of plaintiff. In November the equipment was bought by W. H. Moser, a road contractor, with deal financed by defendant Henry Teders; the present controversy growing out of the negotiations with respect thereto between Moser, Moore, and said Bank.

Defensive allegations pled in bar of plaintiff's said cause of action are sufficiently reflected by the jury issues and answers, in substance that (1) Bill Moore represented to W. H. Moser that the motor grader was in excellent condition prior to November 3, 1947; that there was nothing wrong with it and that the grader would do all the work required of it in Moser's contract with Dew Construction Company; (2) that Moser relied on such representation and would not have purchased the machine if these representations had not been made; (3) that such representations were false; (4) Moore represented to W. H. Moser that the grader was reasonably suitable for the purposes for which it was

purchased; (5) said grader was not reasonably suitable for aforesaid purposes; and (6) was defective on date of purchase; (7) reasonable cash market value of grader on date of sale to W. H. Moser (November 3, 1947) was $2,500.

These further facts should be outlined as a background of all transactions between the parties and bearing on the principal contentions of each: According to testimony of W. H. Moser, he saw the grader on the Moore Equipment Yard, needing one for use on road contract job with Dew Construction Company at Woodville. He explained to Moore his particular situation, the latter assuring him that the grader was in excellent shape, had been recently overhauled, and would perform the work desired; that three or four days later the grader and a dragline (about which similar statements were made) were priced to him at $15,000, he telling Moore that if the equipment was as represented he would endeavor to make a deal. Shortly thereafter defendant Teders agreed to finance the purchase on basis of the representations made by Moore to Moser, issuing check for $15,000; and machinery was delivered to Moser about November 3, the latter moving same to the job and putting it in use. Moser further testified that the grader broke down within an hour, he coming to Dallas for new parts and paying mechanic for repairs; that on putting the machine in operation it again went out, necessitating additional repairs, and on renewed attempts to operate, would not do the work for which it was bought; detailing various deficiencies of both motor grader and dragline, consequent upon which payment on the $15,000 check was stopped. Upon being called over phone by Moore about the check, Moser explained the situation with reference to the equipment, Moore finally saying that the matter should be taken up with Landreth, official of plaintiff Bank. Following are excerpts from testimony as to the ensuing telephone conversation between the two:

"Q. What conversation did you have with Mr. Landreth of the Mercantile National Bank with reference to the trans-

action? A. I told him the condition of the equipment and agreement, and what happened to the equipment, and I felt like I had been out quite a bit of money and time, and that if I endeavored to keep the equipment, he should make some compensation and mark off some of the original price, so that it would justify me to try to get the equipment in shape.

"Q. What did he say? A. He agreed to deduct $1,000 off of the two pieces of equipment.

"Q. Was any arrangement made as to how much would be knocked off of each piece of equipment? A. No, sir, there wasn't.

"Q. How was the price of $4750 for the motor grader arrived at? A. I prorated the prices according to the amount.

"Q. You prorated the prices? A. Yes, sir.

"Q. Did Mr. Landreth raise any objection to your doing that at the time? A. He did not.

"Q. Was some new checks issued? A. There were.

"Q. Who were those checks signed by? A. Henry Teders.

"Q. And who were they payable to? A. Bill Moore and Mercantile National Bank.

"Q. What was the amount of the two checks? A. One was $9,250 and the other was $4,750.

"Q. And the $9,250 check, who was that payable to, you say? A. Bill Moore and Mercantile Bank.

"Q. What was that for? A. The dragline.

"Q. For the dragline, was payment stopped on that check? A. It was not.

"Q. After that agreement was arrived at, in that conversation with Mr. Landreth, you paid $9,250, or Mr. Teders issued his check for that amount, and that check, did that clear the bank? A. It did.

"Q. How long after this check for $4750 for the motor grader was issued before payment was stopped on that? A. I believe it was approximately 8 days or 10.
* * * (Cross-Examination)

"Q. All right, and then you started chiseling the price down, didn't you? A. I don't know what you call chiseling.

"Q. Well, we will leave that up to the jury, but you did get the price down from $15,000 to $14,000, didn't you? A. After two weeks' delay and quite a bit of expense, I deserved the price to be brought down.

"Q. All right, but you got the price down, you can answer that yes or no, you got that price down to $14,000, didn't you? A. Yes, sir.

"Q. All right, and that was on account of the trouble you had with it? A. Yes, sir.

"Q. And you agreed on a new price for the grader and a new price for the dragline, didn't you? A. I agreed on a price for both of them, yes, sir."

After issuance of said $4,750 check for the grader, according to Moser, it was again put on the job, trouble developing after a few hours, and upon examining motor he determined that a major overhaul was necessary; at which juncture payment was stopped and the machine returned to Moore's Dallas Yard in "as good condition as when he got it." This was around December 10. There was other testimony relative to unsatisfactory condition of the grader, both in mechanism and performance. Concerning the bill of sale (also dated November 3), Moser stated that it was turned over to him some days afterward, neither he nor Teders having anything to do with its preparation; that its provision "As is, where is, f. o. b. Dallas" was never discussed, the instrument being returned to Moore along with grader; and that no new bill of sale was given after the November 24th reduction in price.

Appellant's points of appeal in substance charge errors of the trial court in rendition of adverse judgment "where the evidence established and the jury has found" (1) that the purchase of grader for which the $4,750 check was given was induced by fraud; (2) that the consideration for execution of the check sued on had failed in the amount of $2,250 which was more than plaintiff claimed was due after agreed sale of the machine; (3) that there had

been a breach of express and implied warranties incident to sale of the motor grader to defendant's damage.

 Manifestly, in the foregoing negotiations Moser must be considered the agent of defendant Teders, with Moore and later Landreth acting for and on behalf of plaintiff Bank; also that the jury issues touching representations by Moore prior to the first transaction of sale on November 3, 1947, have support in the testimony adduced. In this connection it is the position of appellant that in the sale of grader and dragline on November 3, 1947, wherein payment of the check for $15,000 was stopped and the later agreement of November 24 when delivery of the $4,750 check was followed by a like stop order, aforesaid dealings between the parties should be viewed as a single and continuous transaction, permeated from its inception by the fraud of appellee's representative Moore. This general rule, however, must be adjusted to the facts and circumstances of the particular case; as for instance the acts and conduct of the parties following its discovery. 20 T.J., Fraud and Deceit, sec. 69, p. 106. Contrary to the theory of appellant, the sale of grader and dragline on November 3, consummated by delivery on the one hand and payment by check on the other, again became an executory contract on part of Teders and Moser by withdrawal of check; the subsequent negotiations having all the aspects of a new agreement. In the conversation of November 24, condition of equipment and terms of the earlier agreement were discussed, "and what happened to the equipment"; Moser stating to Bank official Landreth that "if I endeavored to keep the equipment, he should make some compensation and mark off some of the original price so that it would justify me to try to get the equipment in shape." Appellee's acquiescence was by simply reducing the purchase price to $14,000, value of motor grader being fixed at $4,750 at instance of Moser; and it was only on this element of the transaction that suit is brought. As pointed out by appellee, the conclusion is inescapable that Moser, in such conversation, made an election between a rescission and an acceptance of the equipment in its then condition in consideration of a reduced price. Clearly applicable to the transaction just narrated is the general rule that "if one induced by misrepresentations or fraud to purchase, or enter into a contract for the purchase of, property, thereafter, with knowledged of the deception, receives from the seller some substantial concession or enters into a new contract in respect of the transaction, he thereby relinquishes all right to recover or recoup damages because of the misrepresentations." Editor's Note to Bonded Adjustment Co. v. Anderson (Wash.), 106 A. L.R. 166, 171, citing Thompson v. Pitts, Tex.Civ.App., 2 S.W.2d 899; Minneapolis-Moline Power Implement Co. v. Gatzki, Tex.Civ.App., 57 S.W.2d 593, 594. See also 20 T.J., sec. 73, pp. 110, 111. In the case last cited, under facts sufficiently analogous, the Eastland Court held: "There would be no waiver of a right of action for damages for the fraud by a mere affirmance or ratification of the contract, but a new contract capable of enforcement is not only an affirmance or ratification of the original contract, but at the same time becomes the source and measure of the rights of the parties."

Appellant's chief authority in support of his above points, Culver v. Haggard, Tex. Com.App., 270 S.W. 846, 847, and claimed as presenting a fact situation identical to the case at bar, may be readily distinguished upon reading. There the misrepresentations were with respect to a nonexistent permit to prospect for oil and gas, the Commission of Appeals holding in part: "We think that the evidence shows that the act of Haggard in executing the notes to Culver was a continuation of the original transaction, and shows that Haggard was expecting the permit to be issued, and was still willing to be bound by the original contract on condition that Irwin purge himself of fraud by securing the permit that he claimed to own, and that all the facts, as found by the Court of Civil Appeals, do not show an intention on the part of Haggard to waive the fraud practiced on him in the contract with Irwin."

■ Appellant argues insufficiency of pleading on part of plaintiff to support the judgment rendered, in that the same is obviously predicated on an accord growing out of execution and delivery of the $4,750 check; and in plaintiff's supplemental petition there is not a "semblance of a plea of accord, novation, waiver, estoppel, ratification, or any of the affirmative matters required to be specially plead by Rule 94 (Texas Rules of Civil Procedure) * * *." Appellee's suit was on the new or final agreement (evidenced by the check in suit) which could be maintained, we think, without reference to aforesaid Rule. Again, the fact situation is comparable to that reflected in Minneapolis-Moline Power Implement Co. v. Gatzki, supra, where the Court goes on to say: "From the conclusions stated, it results that all the questions presented upon this appeal relative to fraud or warranties, or the manner of submitting issues in reference thereto, are immaterial. It appears upon the face of the record that the issues found by the jury and the judgment of the court in conformity thereto have reference exclusively to a cause of action which the pleadings affirmatively show had been waived, and therefore did not exist." In above case, the new contract was affirmatively shown by defendant's pleading, while here the same conclusively appears as a result of defensive testimony.

All points of error are accordingly overruled and judgment of the trial court affirmed.

### On Petition for Rehearing.

Rehearing denied.

### BOND, Chief Justice.

On original submission I voiced dissent, holding final conclusion, however, to a further review of the record on rehearing. I am in accord with the findings of the jury and that of the majority on the factual background in this appeal; only differ with the majority conclusion, viewed from the record, that the subsequent transaction of the parties was an accord and satisfaction,—a new and independent transaction free of the inducing misrepresentations and fraud attributed to the sellers of the road machinery in question at the time of appellant's purchase.

In the original transaction of November 1, 1947 the appellant purchased a "dragline" and "motor grader" for the sum of $15,000; which transaction, as found by the jury, was induced by false and fraudulent representations by the sellers (appellee a party thereto) as to its mechanical worthiness and suitability for the purposes for which it was intended. The consideration in that transaction was evidenced by check for $15,000 drawn by appellant, which, at the instance of the maker, was dishonored by the receiving Bank and the machinery brought back and delivered to appellees on their lot or place of storage. Whereupon all the parties involved in that transaction arrived at a tentative agreement, involved in this appeal.

The testimony is uncontroverted that a settlement of the controversial issue as to the "dragline" was satisfactorily made, agreeable to all parties, by the appellant paying therefor the sum of $9,250; leaving the adjustment for the motor grader which was postponed "to try to get the equipment in shape," in accordance with the terms and representations of seller's warranty. The plaintiff's suit is based on the $4,750 check as a liquidated demand, and defendant's cross-action or defense was grounded on the original transaction. There is no pleading or evidence by either party of any new and independent cause of action or waiver of the warranty. The verdict of the jury relates the fraud and misrepresentations inducing the sale of the motor grader, i. e.: (1) That prior to November 1, 1947 the sellers represented the motor grader to be in excellent condition, nothing wrong with it, that it would do all the work required of it in furtherance of the purchaser's contract with a named construction company; (2) that the purchaser relied on such representations and would not have purchased the motor grader but for such representations; (3) that such representations were false, in that the motor grader was not suitable for the purposes for which it was purchased, and was defective on the date

**490**

of purchase; and (4) that the motor grader was worth at the date of purchase the sum of $2,500.

It will be observed from the record that the plaintiff raised no objection to the charge of the court or the issues therein submitted, and requested no further issues as to any subsequent new and independent contract involving accord and satisfaction, or waiver of the conditions incident to the purchase of the motor grader. Such issue, if same was raised by evidence, being plaintiff's affirmative defense to the defendant's cross-action for damages, in absence of a request for such submission the plaintiff waived the issue. Rule 279, T.R.C.P.

Be that as it may, the uncontroverted testimony as reflected by the record and as I interpret the majority opinion, is that the subsequent transaction as to the motor grader, for which the $4,750 check was executed to the plaintiff Bank, was for a conditional tryout after necessary repairs had been made to the motor grader to make it usable as represented and warranted by the sellers. It was a continuous transaction, permeated from its inception by the fraud and misrepresentation of the appellee and its associates. The testimony of W. H. Moser as quoted by the majority shows conclusively that the controversy over the dragline was settled for $9,250 which was paid, and that the defendant took the motor grader and put it on the job to test its usability. He testified: "Q. What conversation did you have with Mr. Landreth of the Mercantile National Bank with reference to the transaction? A. I told him the condition of the equipment and agreement, and what happened to the equipment, and I felt like I had been out quite a bit of money and time, and that *if I endeavored to keep the equipment,* he should make some compensation and mark off some of the original price, *so that it would justify me to try* to get the equipment in shape. * * * Q. How was the price of $4750 for the motor grader arrived at? A. I prorated the prices according to the amount. * * * Q. Was some new checks issued? A. There were. * * * Q. What was the amount of the two checks? A. One was $9,250 and the other $4,750. * * * Q. After that agreement was arrived at, in that conversation with Mr. Landreth, you paid $9,250, or Mr. Teders issued his check for that amount, and that check, did that clear the bank? A. It did. Q. How long after this check for $4750 for the motor grader was issued before payment was stopped on that? A. I believe it was approximately *8 days or 10.*" (Emphasis mine.) Evidently the delay in presenting the check was in consonance with the testimony for appellant to "try to get the equipment in shape."

It will be observed from the record evidence above stated and from the opinion of the majority that the evidence does not support an issue of accord, novation, waiver, estoppel, ratification, or any of the affirmative matters which were not pleaded; no evidence to sustain them as to justify the conclusion of the majority that the defendant waived the fraudulent representations of the machinery in taking such machinery to try to make it work on the job, or "try to get the equipment in shape"; but conclusively shows that the defendant merely made the arrangements in an effort to make the motor grader perform the services which he intended it to perform and which the seller represented that it would do. The evidence further shows that after this last transaction and the expenditure of a great amount of money and labor by the purchaser, the motor grader would not perform the services for which it was intended; thus it was returned to the seller.

In my opinion the judgment of the trial court should have been that the plaintiff recover nothing by its suit, in conformity to the verdict of the jury. The trial court was not warranted to decide the issue of waiver on plaintiff's motion non obstante in absence of pleadings, evidence, and request for submission of plaintiff's affirmative issue of waiver, if in fact such issue was raised on trial of the cause.

I respectfully register my disapproval of the conclusion of the majority in affirming

the judgment of the trial court. Appellant's motion for rehearing should be sustained and judgment here rendered, as the trial court should have rendered, that plaintiff take nothing by its suit.