## C. M. Hawkins v. C. C. Wells et al.

### Delivered November 8, 1897.

**1. Rescission—False Representations—Equal Information.**

Where the vendor of land has no good title, and is not aware of his title being defective, but believing it to be good, so represents it to the purchaser, stating that his information as to the title is derived solely from his own vendor, and the purchaser consults such prior vendor in reference to the title before buying, he is not entitled to have the sale rescinded and to recover back the consideration paid by him in other land, no matter upon whose representation he relied.

**2. Same—Statement of Opinion and of Fact—Good Faith.**

Where the vendor in making the trade expresses a mere opinion, with no intent to deceive, the vendee has no right to rely thereon; but if the vendor makes a posi-

tive affirmation of fact that is false, and on which the vendee is, from the surround-
ings, authorized to rely and does rely, and is injured thereby, the vendee is entitled
to relief, and it is immaterial whether or not the statement was made in good faith.

### 3. Same—Special Warranty Deed Taken.

Where the purchaser accepts a special warranty deed, understanding its legal ef-
fect, the law presumes that he acted upon his own knowledge of the title, and he will
not be heard to complain that he did not receive a perfect title, unless some misrep-
resentation was made upon which he had a right to rely and did rely.

### 4. Same—Implication of Law in Absence of Covenants.

Under articles 633 and 634, Revised Statutes of 1895, where there are no covenants
of title in a deed of realty, none will be implied by law except as to prior conveyances
by the grantor, and that the estate is free from incumbrances, such as taxes and liens.

APPEAL from Fannin. Tried below before Hon. E. D. McCLELLAN.

*T. P. Steger* and *Richard B. Semple,* for appellant.—Although the
opinion of Arledge may have influenced plaintiff in part to make the
trade, yet if plaintiff was moved by the false representations of Wells
as to the title so that without them plaintiff would not have parted with
his title to the fifty-six acres, plaintiff is entitled to recover. Pendarvis
v. Gray, 41 Texas, 329; Rhodes v. Alley, 27 Texas, 443; Newton v. Gans,
26 S. W. Rep., 81; 2 Pom. Eq. Jur., sec. 878.

*Lusk & Thurmond* and *Taylor & McGrady,* for appellees.—Appellant
knew and was informed by appellees that they had never seen the Tom
Green land, nor investigated its title, and that they relied solely on
Arledge's statements as to the title; consequently any misrepresentation
honestly made by them was concerning matters equally within appellant's
knowledge, for he had the means of acquiring, and before he traded did
acquire, from Arledge in person all the knowledge possessed by appellees;
wherefore he was not justified in relying upon appellees' representations.
Cresap v. Manor, 63 Texas, 483; Garrett v. Burleson, 25 Texas Supp., 41;
2 Willson Con. Cas., sec. 394; 2 Pom. Eq. Jur., secs. 890, 891, 892; Fry
on Spec. Perf., secs. 441–444; Farrar v. Churchill, 135 U. S., 609; Devel-
opment Co. v. Silva, 125 U. S., 247; Clark v. Reeder, 158 U. S., 505;
Jackson v. Stockbridge, 29 Texas, 394.

RAINEY, ASSOCIATE JUSTICE.—This suit was brought by appellant
to rescind a contract of sale of land and cancel a deed by which he con-
veyed to C. C. Wells 56 acres of land in Fannin County, Texas. The con-
sideration for said conveyance was a tract of land of 640 acres in Tom
Green County, Texas, which was deeded to appellant by one A. J. Camp-
bell, and the sum of $100 paid by said Wells to appellant.

The effect of the allegations in plaintiff's petition is, that said Wells
and said Campbell entered into a conspiracy to defraud plaintiff out of
his land; that they represented the title to the 640 acres of land to be
good, which was not true; that Wells said he would guarantee the title
to same, etc. That he relied on said statements as to the condition of the
title, and was induced thereby to execute the deed to Wells, he being

ignorant of the want of title in Campbell to the 640 acres of land. After the trade Wells took possession of the 56-acre tract and made improvements thereon. Plaintiff asked for rent of said premises, and that the $100 paid him be deducted from said rents, etc.

Wells answered by general denial, special demurrers, and plea of not guilty; and specially that he traded with Campbell for the 640-acre tract at the request of plaintiff. That Campbell owed on said land $340, which he (Wells) paid, and he also paid to plaintiff $100 in cash, the understanding being with plaintiff that he was to trade with Campbell for the 640-acre tract, and plaintiff was to deed him the 56 acres for same. That he knew nothing of the title to the 640 acres, except from hearsay; had never seen it, which was known to plaintiff. That he had acted in good faith and made valuable improvements on the land, etc. On the trial judgment was rendered for the defendants, and plaintiff appeals.

The evidence shows that Hawkins and Campbell were negotiating for the exchange of land, when Wells came upon the scene. A trade was agreed upon by which Campbell was to deed Hawkins the 640-acre tract, Wells to pay $340, amount due on the land by Campbell, also to pay Campbell $30 and Hawkins $100, and Hawkins was to deed Wells the 56-acre tract. This trade was subsequently consummated.

As to the representations made by Wells and Campbell as to the title to the 640-acre tract, there is a conflict in the evidence; the evidence of plaintiff showing that Wells and Campbell made positive assertions that the title to the 640-acre tract was good, and that Wells proposed to "guarantee" the title. On the other hand, the evidence of defendants was to the effect that they stated to plaintiff that they knew nothing about the title, but thought it was good. On the day plaintiff executed his deed to Wells the parties went to the office of Agnew & Duncan, attorneys, to have the papers drawn up. While there the question of title to the 640-acre tract was raised. Wells said Arledge knew more about the title, as he had owned the land, and Agnew proposed that he be seen about it. Wells and Hawkins went to see Arledge, who was merchandising there. Arledge testified on this point, which testimony was not contradicted: "I told them the sheriff of Tom Greene County sold it to somebody on a debt against the railroad company, and it had been transferred down to me and properly conveyed, and I thought the title good. I knew nothing about the title except what had been told me, and what I had noticed from a number of deeds in my chain of title which I had when I sold to Campbell. I gave them the information truthfully as I then believed it to be; but stated to Hawkins and Wells that I thought it was good. I gave Campbell a special warranty deed to this land."

Wells and Hawkins returned to the office of Agnew & Duncan and instructed them to draw the deed, as matters were satisfactory. Campbell refused to execute any but a special warranty deed, and Duncan explained to Hawkins what a special warranty deed was, and told him he would get such title as Campbell and Arledge had. Wells paid the money as he contracted. Hawkins accepted the deed with special warranty from

Campbell, and executed the deed to Wells conveying the 56 acres; Wells took possession and made valuable improvements thereon. Campbell's title to the land was not good.

We conclude that Hawkins accepted the deed to himself, having the same knowledge of the title that Wells had, and knowing the legal effect of a special warranty deed.

The first assignment of error is: "The court erred in charging the jury that 'if Campbell had no title to the 640 acres, and if defendants did not know of his want of title, but honestly believed that he had a good title, and so represented to plaintiff, and if they stated to plaintiff that their knowledge or information as to the title of Campbell was acquired solely from George Arledge, Campbell's vendor, and if plaintiff consulted said Arledge in regard to such title before delivering his deed to Wells for the 56 acres, then the plaintiff can not recover, no matter upon whose representation he relied;' because there is no evidence showing the supposed case represented by said charge. Said charge is not the law, and is upon the weight of the evidence."

Wells testified that he knew nothing about the title to the 640-acre tract; and that he never made any representations about the title to Hawkins or anyone else. That when the deed from Campbell to Hawkins was being prepared Hawkins raised the question about the title to said tract, and stated that he was afraid of it. Campbell then said he knew nothing of the title, only what he had been told; that George Arledge, from whom he bought, said the title was good. Hawkins and Wells then left to interview Arledge, and when returning, Hawkins expressed himself as satisfied with the title from what Arledge had told them. We think this evidence warranted the charge as to the effect of the representations, if any, as to the title. If this was true, Hawkins had procured from Arledge all the information about the title that was possessed by the defendants, and expressed himself satisfied therewith. His means of knowledge being equal to that of defendants, and having availed himself thereof by making inquiry, he will not be entitled to relief, although he may have relied on the representations of the defendants. "Misrepresentation entitling to relief must be in reference to some material thing unknown to the purchaser, either from not having examined, or from want of opportunity to be informed, or from entire confidence reposed in the vendor; that a concealment of material facts known to the vendor and unknown to the vendee, which are calculated to influence the action or operate to the prejudice of the vendee, is fraudulent, but that where the facts lie equally open to both vendor and vendee, with equal opportunities of examination, and the vendee undertakes to examine for himself, without relying on the statements of the vendor, it is no evidence of fraud in such case that the vendor knows facts not known to the vendee and conceals them from him." Farrar v. Churchill, 135 U. S., 609; and see Cresap v. Weaver, 63 Texas, 485; Jackson v. Stockbridge, 29 Texas, 394; Mitchell v. Zimmerman, 4 Texas, 75; Clark v. Reader, 158 U. S., 505.

The court did err, however, in charging, in this connection, on the good

faith of defendants in making representations as to title. It was not a question of good faith on the part of defendants, but whether or not plaintiff was entitled to relief by reason of the representations, if any, made by defendants. But this error was not calculated to influence the jury to the prejudice of plaintiff.

The following paragraph of the court's charge is assigned as error, to wit: "The mere expression of an opinion or belief by Campbell or Wells to plaintiff that Campbell's title was good, if the one making the expression honestly believed the title to be good, could not constitute such fraud as to entitle plaintiff to recover, no matter how erroneous such opinion or belief may have been. If defendants honestly believed Campbell's title to be good, the statements made to plaintiff in regard to such title, in order to amount to a fraud such as would entitle plaintiff to recover, must have amounted to the positive assertion, as a fact, that Campbell had a good title; the statement must have been false; the plaintiff must have relied on it, and must have been induced thereby to make the deed conveying his 56 acres to Wells."

We see no reversible error in this charge. Where one in making a trade expresses a mere opinion, with no intent to deceive, the party to whom it is made has no right to rely thereon. It is otherwise where a party intentionally expresses an opinion that is calculated to deceive by reason of the circumstances that surround the parties or transaction, or, if he makes a positive affirmation that is false, and on which a party is, from the surroundings, authorized to rely and does rely, the party injured thereby is entitled to relief, and it is immaterial whether or not the statement was made in good faith. The rule is clearly expressed by Mr. Pomeroy in his excellent work on Equity Jurisprudence, volume 2, sections 877, 878, as follows:

"A misrepresentation must be an affirmative statement or affirmation of some fact, in contradistinction to a concealment or failure to disclose, and to a mere expression of opinion. * * * Since the very cornerstone of the doctrine is that the statement must be an affirmation of a fact, it has sometimes been said, but very incorrectly, that a misrepresentation can not be made of a matter of opinion. The true rule is, that a fraudulent misrepresentation can not itself be the *mere expression of an opinion* held by a party making it. The reason is very simple; while the person addressed has a right to rely on any assertion of a fact, he has no right to rely upon the mere expression of an opinion held by the party addressing him, in whatever language such expression be made; he is presumed to be equally able to form his own opinion, and to come to a correct judgment in respect to the matter, as the party with whom he is dealing, and can not justly claim therefore to have been misled by the opinion, however erroneous it may have been." Mitchell v. Zimmerman, supra; Newton v. Gans, 26 S. W. Rep., 81.

In the first five paragraphs of the court's charge a clear exposition of the law applicable to the facts of plaintiff's case as made by his pleadings and proof, was given to the jury.

In the succeeding paragraphs of the charge the law applicable to the facts from defendants' standpoint was given. Taking the charge as a whole, we are of opinion that the case as made by both sides was fairly presented.

The deed executed by Campbell to Hawkins conveying the 640 acres of land contained a covenant of special warranty. The deed expressed the contract between the parties, and the presumption of law is that Hawkins acted upon his own knowledge of the title, and he will not be heard to complain that he did not receive a perfect title, unless some misrepresentation was made upon which he was authorized to, and did rely, in making the contract, that will entitle him to relief. McEntyre v. DeLong, 71 Texas, 86; Rhode v. Allen, 27 Texas, 445.

Even where there are no covenants as to title, none will be implied in this State, except as to a prior conveyance by the grantor, and that such estate is free from incumbrances, "which includes taxes, assessments, and all liens upon real property." Sayles' Civ. Stats., arts. 633, 634.

In 2 Devlin on Deeds, section 957, we find this language: "Where there has been no fraud, mistake, or accident, a purchaser who has taken a deed without covenants has no right, for a defect in his title * * * to detain the purchase money or to recover it in case of payment."

The uncontradicted evidence shows that Campbell refused to execute a deed with covenants of title, other than a special warranty. Hawkins was duly apprised of the effect thereof, and the evidence is sufficient to warrant the conclusion that he did not act on the faith of any representation of Wells that would entitle him to relief.

The judgment of the court below is affirmed.

*Affirmed.*

Writ of error denied.