## INDEMNITY INSURANCE COMPANY OF NORTH AMERICA v. W. L. MACATEE & SONS.

No. 6754.   Decided February 17, 1937.
Rehearing overruled March 17, 1937.
(101 S. W., 2d Series, 553.)

*Baker, Botts, Andrews & Wharton, Homer L. Bruce,* and *S. H. German,* all of Houston, for plaintiff in error.

It was error for the Court of Civil Appeals to disregard the findings of fact by the trial court that the laborers did not know that the assignment sheets were attached to the pay rolls, and did not intend to execute any assignments of their liens, and in holding that the mere signing of pay rolls by laborers to which were attached sheets of paper containing words of assignment (in the face of the fact that they did not know anything about the assignments being attached) constituted valid assignments of the laborers' liens to W. L. Macatee & Sons. Texas & St. Louis Ry. Co. v. McCaughey, 62 Texas 271; Birdsall v. Coon, 139 S. W. 247; Lancaster v. Sanford, 225 S. W. 808.

*H. L. Nicholson* and *E. R. Campbell,* both of Houston, for defendants in error.

A person signing a written instrument, with full opportunity to inform himself as to its contents, can not avoid its terms on the ground that he was ignorant or mistaken as to its contents or that he thought it was a mere form, or because he could not read. Keystone Company v. Kleeden, 299 S. W. 673; Yantis v. Jones, 184 S. W. 572.

Mr. Judge Smedley delivered the opinion of the Commission of Appeals, Section B.

Fred B. Chambers as principal and plaintiff in error as surety executed a bond to secure the performance by Chambers of his contract for the construction of a school building for the Houston Independent School District. The bond bound the makers to perform the building contract and to pay all subcontractors, workmen, laborers, mechanics and furnishers of material as their interests might appear. Being financially unable to meet the weekly pay rolls for labor, Chambers made an agreement with defendants in error, W. L. Macatee & Sons, under which Macatee & Sons advanced each week for nineteen weeks during the progress of the work the funds necessary to pay the laborers. The agreement was that Macatee & Sons should pay to Chambers each week the amount due the laborers as wages, that the money paid should be used for that purpose and that Chambers should procure the execution by the workmen of written assignments to Macatee & Sons of their several claims for such wages. In performance of the agreement Chambers prepared each week a pay roll containing the names of the laborers and the amount due each, with lines opposite the names and amounts for the laborers' signatures. These pay rolls were delivered to the credit man of Macatee & Sons, who firmly attached to and in front of each of the pay rolls a sheet of paper on which was typewritten the following: "The money covering the wages set out on the attached sheets having been paid to us by W. L. Macatee & Sons, we hereby assign to W. L. Macatee & Sons our respective claims for such services and subrogate them to all our rights under such claims." The pay roll and the attached assignment sheet, together with a check for the amount shown by the pay roll to be due the laborers, were delivered to Chambers, who used the proceeds of the check to pay the laborers in cash and procured their signatures to the pay roll when payment was made to them.

Chambers was unable to complete the building and it was taken over and finished by plaintiff in error, the surety. All claims for labor and material arising out of the construction of the building were paid, except that the surety company declined to pay to defendants in error Macatee & Sons the claims assigned to them by the laborers. Thereupon defendants in error filed this suit against Chambers and plaintiff in error, the surety company, for the recovery of $30,320.15, alleged to be the aggregate amount of the claims assigned to them by the laborers, and for interest and attorney's fees.

On trial before the court without a jury judgment was rendered in favor of Macatee & Sons against Chambers and the surety company for $790.78, with interest, representing the amount of the claims assigned by one laborer, Treloar. Macatee & Sons appealed and the Court of Civil Appeals reversed the judgment which awarded to them $790.78 and rendered judgment in their favor against the surety company for $22,804.60, together with interest and attorney's fees. 69 S. W. (2d) 486. The surety company's application for writ of error was granted.

The trial court filed no formal findings of fact, but it is shown by a statement made by the court at the conclusion of the trial, appearing in the transcript of the evidence, that the basis of the trial court's judgment was the conclusion that the acts of the laborers in signing the pay rolls with the assignment sheets attached did not constitute assignments of their claims, because, with the exception of Treloar, they did not know the contents of the attached assignment sheets and therefore did not intend by signing the pay rolls to assign their claims. The Court of Civil Appeals treated the pay roll and the attached assignment as in effect one instrument and held that valid assignments of their claims were made by the laborers, there being no evidence showing that they were induced to sign the pay rolls by any false or fraudulent representation or concealment.

The original nineteen weekly pay rolls with the attached assignment sheets were introduced in evidence and sent up with the record. The pay rolls are upon printed ruled sheets of paper seventeen by eleven inches in size. One column contains the names of the workmen written one under the other on separate lines. In other columns opposite the names are written under printed headings the number of hours of work done each day of the week, the total time, the rate of pay, and the amount due. In the last column and opposite each name are the signatures of the workmen under the printed heading, "Received payment in full to date." The sheet attached to each weekly pay roll upon which the assignment appears is an ordinary white sheet of paper eleven by eight and one-half inches in size. The words of assignment hereinbefore quoted are typewritten, double spaced, in the center of the page. Three of the weekly pay rolls consist each of one sheet, four of them each of two sheets, and the remaining twelve each of three sheets. The sheet on which the assignment is written is attached at the top to and in front of the sheet or sheets containing the pay roll.

Treloar, who paid the workmen for Chambers, stood inside

a house at a window from which a ledge projected. The men formed in line outside the house and came, one at a time, to the window to sign the pay roll and receive their pay. The pay roll with the assignment sheet attached rested upon the ledge in front of Treloar. As the workman came to the window Treloar folded back the top sheet containing the assignment so that the workman could see his name and the amount due him and sign opposite his name. The money due was delivered to him in an envelope when he had signed his name. If the pay roll covered more than one sheet and the workman's name appeared on the second or third sheet, the first or the first and second sheets of the pay roll, as well as the assignment sheet, were turned or folded back so that the workman could sign the pay roll opposite his name. Treloar did not explain the assignment to any of the men and did not direct their attention to it. He did nothing to conceal from them the contents of the assignment sheet or to prevent them from knowing that it was attached to the front of the pay roll. The words constituting the assignment were concealed from the workmen when the sheet on which they were written was turned or folded back, but the assignment sheet was in plain view of the men before it was folded back and when they signed the pay roll, whether on the first, second or third page, they saw that one, two or three attached sheets in front of the page on which they had signed had been turned back.

None of the men who signed the pay roll testified except Treloar and Horn. Treloar knew that the pages containing the assignments were attached to the pay rolls. Horn testified that when he signed the pay rolls he noticed the typewritten sheets attached to them but did not read them, that sometimes he turned back the typewritten sheet and sometimes Treloar turned it back, and that he thought he was signing a form of pay roll that he had been used to signing.

1   It may be assumed from the trial court's judgment and statements contained in the transcript of the evidence that the court found from the foregoing undisputed facts that the men who signed the pay rolls, except Treloar, did not in fact know the contents of the assignment sheets and that accordingly they did not consciously intend by affixing their signatures to assign their claims to Macatee & Sons, but it does not follow that valid assignments were not made. One is presumed to intend what he does or undertakes to do by the terms of a written instrument voluntarily signed by him. To use the language of Justice HUNT in Upton v. Tribilcock, 91 U. S. 45, 23 L. Ed. 203, 205: "It will not do for a man to enter into a contract and,

when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission." Similar statements of the rule were made by Justice BONNER in Womack v. Western Union Telegraph Co., 58 Texas 176, 179, 44 Am. Rep. 614, and by Justice STAYTON in Morrison v. The Insurance Company of North America, 69 Texas 353, 359, 6 S. W. 605, 5 Am. St. Rep. 63, as follows:

"The sound and practical rule of law in such cases is, that, in the absence of fraud or imposition, a party to a contract, which has been voluntarily signed and executed by him, with full opportunity for information as to its contents, can not avoid it on the ground of his own negligence or omission to read it."

"Every person having capacity to make a contract, in the absence of fraud, misrepresentation or concealment, must be held to have known what the words used in a contract made by him were, and to have known their meaning; and he must also be held to have known and fully comprehended the legal effect of the contract which the words used made."

See also: Ætna Insurance Co. v. Holcomb, 89 Texas 404, 410, 34 S. W. 915; Wheeler v. Holloway, (Com. App.) 276 S. W. 653; Kasch v. Farmers Gin Co., (Com. App.) 3 S. W. (2d) 72; 10 Tex. Jur., pp. 98-99, Sec. 57; 6 R. C. L., pp. 624-625, Sec. 43; 13 C. J., pp. 370-371, Sec. 249.

2  Plaintiff in error concedes that such is the general rule but contends that the case comes within an exception, which is that one who signs a contract without knowledge of its contents is not bound when his neglect to inform himself is induced by some trick or artifice on the part of the person seeking to enforce the contract. Many authorities support the following statement which appears in the application for writ of error: "While it is true that where one signs an instrument he must read it, if he can read, or have it read if he can not read, yet this rule does not operate where a trick or artifice is resorted to for the purpose of preventing him from reading or having it read to him." See: Hardy v. Kansas Manufacturing Co., (Com. App., 1891) 18 S. W. 157; Kasch v. Farmers Gin Co., (Com. App.) 3 S. W. (2d) 72; Western Manufacturing Co. v. Cotton & Long, 126 Ky. 749, 104 S. W. 758, 12 L. R. A. (N. S.) 427; Interna-

tional Transportation Association v. Bylenga, 254 Mich. 236, 236 N. W. 771; Midland Coal Co. v. Rice, 197 Iowa 711, 198 N. W. 24; 10 Tex. Jur., p. 99, Sec. 57; 6 R. C. L., pp. 625-626, Sec. 44.

It is our opinion, however, that the general rule rather than the exception governs the instant case, because the record contains no evidence tending to prove that the workmen's signatures were obtained by any false representation, trick or artifice. The pay roll and the attached page on which the words of assignment appeared constituted one instrument of two, three or four pages. It can not be said that one who signs on the second, third or fourth page of an instrument written, typewritten or printed on two, three or four pages fastened together does not thereby bind himself to the provisions of the instrument appearing on the pages preceding that on which he signs. The words of assignment are plainly written on the first page. There is no ambiguity in their meaning. They become a part of the succeeding pages since they expressly refer to the following or attached pages. They provide in substance that, inasmuch as the money covering the wages on the attached pages has been paid by W. L. Macatee & Sons, those who sign do thereby assign to W. L. Macatee & Sons their respective claims. There is no evidence suggesting the Treloar, who procured the signatures of the laborers, did anything to mislead any of those who signed or that he used any trick or device to induce them to sign without reading. He turned back a sheet or sheets for their convenience in signing opposite their names, but there is no evidence tending to prove that he did this to conceal the assignment from them or to mislead them. They could plainly see that a sheet or sheets had been folded back and could have examined such sheet or sheets by turning them down or asking Treloar to do so. Of the men who signed the pay rolls only Treloar and Horn testified, and the substance of Horn's testimony is that he noticed the attached typewritten sheets and sometimes turned them back himself, but did not read them. The fact that Treloar, who had handled pay rolls for many years, did not know of any other instance when an agreement of assignment had been attached to a pay roll does not tend to prove that the assignment sheets were attached to obtain the signatures of the workmen by trick, device or unusual artifice. None of the workmen who signed testified that he was misled, tricked or defrauded, and none of the workmen is attacking the assignments. The signatures to the written instruments proved the assent of the workmen to the assignments, and the burden was upon the surety

company, seeking to avoid the written instruments, to prove that the signatures were procured by fraud, misrepresentation or concealment. No such proof was made.

Several of the workmen were not able to read or write and signed by mark attested by Treloar, who neither read nor explained the assignment to them. There is no evidence that they asked for a reading or explanation or that anything was done to mislead or to conceal the contents of the instruments from them. Under such circumstances they were bound by the terms of the instrument as fully as were those who could, and did not, read it. Yerxa, Andrews & Thurston v. Viviano, (Mo.) 44 S. W. (2d) 98; Shulman v. Moser, 284 Ill. 134, 119 N. E. 936; First National Bank of Sioux Center v. Ten Napel, 198 Iowa 816, 200 N. W. 405; Bates v. Harte, 124 Ala. 427, 26 So. 898, 82 Am. St. Rep. 186; W. R. Grace & Co. v. Strickland, 188 N. C. 369, 124 S. E. 856, 35 A. L. R. 1296; Chicago St. P. M. & O. Ry. Co. v. Belliwith, (U. S. C. C. A.) 83 Fed. 437; 13 C. J., p. 372, Sec. 251.

3  The Court of Civil Appeals did not err in rendering judgment in favor of defendants in error for an additional ten per cent. as attorney's fees. The bond provided that "should the obligees be put to any expense for the enforcement of the contract or this bond, the same shall be paid by the principal and surety to the owner, subcontractors, workmen, laborers, mechanics and furnishers of material as their interests may appear." It was stipulated by the parties on the trial that "if plaintiffs are entitled to recover any attorney's fees herein, a reasonable attorney's fee is and shall be ten per cent. of the amount recovered by plaintiffs." The interests and rights of the laborers in and under the bond were assignable; and the assignments of the claims carried with them the incidental right to recover reasonable attorney's fees incurred in their enforcement. Article 569, Revised Civil Statutes 1925; Cleveland & Cameron v. Heidenheimer, 92 Texas 108, 46 S. W. 30; Reef v. Mills Novelty Co., 126 Texas 380, 89 S. W. (2d) 210; Title Guaranty & Trust Co. v. Crane Co., 219 U. S. 24, 55 L. Ed. 72, 31 Sup. Ct. 140; Seastrunk v. Pioneer Savings & Loan Co., 34 S. W. 466; Chicago Cottage Organ Co. v. Waddell, 35 S. W. 408; De Zavala v. Scanlan, (Com. App.) 65 S. W. (2d) 489, 492; 5 Tex. Jur., pp. 44-45, Sec. 35.

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court February 17, 1937.

Rehearing overruled March 17, 1937.