DALLAS FARM MACHINERY CO.,
Appellant,

v.

MINNEAPOLIS–MOLINE CO. et al.,
Appellees.

No. 15503.

Court of Civil Appeals of Texas.

Dallas.

May 1, 1959.

Rehearing Denied June 5, 1959.

Wilbur T. Knape, Dallas, for appellant.

Bowyer, Thomas, Crozier & Harris, Dallas, for appellees.

DIXON, Chief Justice.

This is an appeal by L. D. Beckham and G. H. Kincaid, Jr., partners doing business as Dallas Farm Machinery Company, plaintiffs in the trial court, from a summary judgment in favor of appellees that appellants recover nothing by their suit against appellees Minneapolis-Moline Company and W. B. Barry, defendants in the trial court.

In their second amended petition appellants alleged that on September 23, 1953, they entered into a written dealership contract with Minneapolis-Moline Company. They alleged that they were fraudulently induced to enter into the written contract by the oral representations of appellee Company's agents to the effect that (1) company records reflected a sales volume of $37,000 in the Dallas area in a period of only a few months; (2) Dallas Farm Machinery Company could be the authorized dealer representative for Minneapolis-Moline Company as long as desired by Dallas Farm Machinery Company; and (3) the Company would pay to appellants the difference between the retail price and the factory invoice price on all sales which might be made for the convenience of customers at the factory branch. None of these alleged representations are carried forward into the written contract entered into by the parties.

Appellants further alleged that (4) the contract of September 23, 1953, gave them an exclusive dealership in Dallas County; (5) but about four and a half months after the inception of the contract appellee Company, in conspiracy with W. D. Barry, its Texas Division Manager, began making retail sales in Dallas County without accounting to appellants; (6) which partial breach of the contract caused damages to appellants of $50,000 for a period of time up to February 22, 1957; (7) on the latter date appellee Company attempted fraudulently to cancel the contract, and thereafter refused to sell machinery and parts to appellants; (8) to appellants' damages in the amount of $400,000 covering a period of twenty years beginning February 23, 1957.

The record before us consists of the pleadings of the parties, affidavits, exhibits and the depositions of four witnesses, including appellant partners L. D. Beckham and G. H. Kincaid, Jr.

The controlling facts are undisputed. At the time of the execution of the written contract of September 23, 1953, L. D. Beckham was sole owner of Dallas Farm Machinery Company. G. H. Kincaid, Jr., came

into the business as a partner some time in 1954. He was not a party to the contract.

Soon after the entry of Kincaid into the business the contract of September 23, 1953, was superseded by a new written contract dated April 8, 1954, which was like the contract of September 23, 1953, except that it was signed by Kincaid as well as Beckham. This second written contract was executed after the alleged partial breach of the first contract had occurred, of which alleged breach Kincaid and Beckham were aware, as is shown by their depositions. Both the written contracts of September 23, 1953 and April 8, 1954, contained this provision: "To preclude any misunderstanding relative to such responsibilities the obligations of each party are hereinafter set forth and shall govern the relations between the Company and the Dealer during the period from and after the approval of this Contract by an officer of the Company until its termination, as hereinafter provided, *or until it is superseded by another written* contract between the parties". (Emphasis ours.)

On November 16, 1955, a third written dealership contract was executed by the parties. It was similar in most respects to the other two contracts but contained some changes.

The contracts of September 23, 1953 and April 8, 1954, contained this provision: "It is understood and agreed that this contract contains the entire agreement between the Company and the Dealer *and supersedes all previous contracts pertaining to the sale of goods covered thereby*". (Emphasis ours.) The contract of November 16, 1955, contained a provision slightly different, but substantially the same.

All three contracts contained this provision: "27. Termination by Either Party. Unless terminated under paragraph 26 or by mutual agreement of the parties hereto, this contract shall continue in force until cancelled by either party upon giving thirty (30) days' written notice by regis-

tered mail". Appellants, as shown by their depositions, were aware of this provision in the contract.

On January 22, 1957, appellee Company acting through its Texas Division Manager, W. B. Barry, sent a letter of cancellation by registered mail to appellants. We quote the main part of the letter: "We are cancelling your Farm Machinery Sales contract dated the 28th of October 1955 and approved on the 16th of November 1955. This cancellation is in accordance with paragraph 27 of the contract and shall become effective at the close of business on February 22, 1957." Appellants in their depositions admit that this letter was received.

In their first, second, third, seventh, eighth and ninth points on appeal appellants assert in substance that the court erred in holding that the evidence of record did not present any genuine issue of material fact.

Appellants claim that the contracts of April 8, 1954 and November 16, 1955, merely "resubmitted" the contract of September 23, 1953, and that the latter contract remained in force and effect until it was breached in its entirety by appellees on February 22, 1957.

We are unable to agree with appellants. Their contention is contrary to the express terms of the two latter contracts. In the early case of Hughes v. Prewitt, 5 Tex. 264, it is said "If the parties to a contract agree to rescind it and substitute a new contract, and afterwards one of the parties fails to perform, the cause of action is upon the new contract." The rule is well stated in 17 C.J.S. Contracts § 394, p. 886: "A contract which expressly cancels a prior contract is to be regarded as independent thereof, and not as a continuation of it." Appellant's suit is based on a contract which has not been in force and effect since April 8, 1954.

In the instant case, though they allege that they were induced to enter into the

contract of September 23, 1953, by the fraudulent representations of the Company's agents, appellants are not suing to rescind the contract, nor are they suing for any damages for alleged fraud in inducing them to enter into the contract. They affirm the contract and sue for alleged loss of profits in the amount of $50,000 suffered prior to February 22, 1957, because of a partial breach of the contract of September 23, 1953, which partial breach they say began in January 1954. Yet they were aware of the alleged partial breach when they signed the new and superseding contract of April 8, 1954, a contract which expressly provides that one of its purposes is to preclude any misunderstanding in regard to the obligations of the parties toward each other. We think the applicable rule is stated in Teders v. Mercantile Nat. Bank, Tex.Civ. App., 235 S.W.2d 485, 488: "If one induced by misrepresentations of fraud to purchase, or enter into a contract for the purchase of, property, thereafter with knowledge of the deception * * * enters into a new contract in respect of the transaction, he thereby relinquishes all right to recover or recoup damages because of the misrepresentations." There is no fact issue with reference to the appellants' claim for damages of $50,000 for partial breach of the contract of September 23, 1953.

In the case now before us appellees pled waiver and estoppel. In our opinion the undisputed facts support the pleas. Henshaw v. Texas Natural Resources Foundation, 147 Tex. 436, 216 S.W.2d 566, 571; Masterson v. Bouldin, Tex.Civ.App., 151 S.W.2d 301; 31 C.J.S. Estoppel § 163, p. 461; 43B Tex.Jur. 491.

Appellants also sued for $400,000 for anticipated profits for a period of twenty years beginning February 22, 1957. This was the effective date of the cancellation of the last superseding contract, that of November 16, 1955. It is undisputed that appellees complied with the terms of paragraph 27 of the contract, a valid provision for cancellation by either party after 30 days notice. Wood Motor Co. v. Nebel, 150 Tex. 86, 238 S.W.2d 181, 185. Consequently no fact issue is presented in regard to the claim for $400,000 damages.

Appellants' first, third, seventh, eighth and ninth points on appeal are overruled.

■ In their fourth, fifth, sixth, and eleventh points appellants say that the trial court erred in its interpretation of paragraph 2 of the contract of September 23, 1953. Paragraph 2 provides that both the Company and Dealer may sell goods covered by the contract to Federal, State or local governments and departments thereof and educational institutions, and if such sales are made by the Company it shall not be liable to the Dealer for any compensation. Appellants' position is that since this provision expressly permits appellee Company to sell to the named persons, it excludes by implication the right to sell to other persons, thus providing for exclusive retail sale by appellants of appellee Company's products in Dallas County.

Again we find ourselves unable to agree with appellants. Such an interpretation would read an implied covenant into an express contract, which under the circumstances here present may not be done. Danciger Oil & Refining Co. of Texas v. Powell, 137 Tex. 484, 154 S.W.2d 632, 137 A.L.R. 408; Palm v. Mortgage Investment Co. of El Paso, Tex.Civ.App., 229 S.W.2d 869.

For about four months after Kincaid came into the business the Company permitted appellants to send their customers to the factory branch warehouse for the filling of orders. Thus the Company was for a time and to an extent allowing itself to be used as a sales agent for appellants. But the written contract contains no provision requiring such procedure. The practice was stopped soon after Kincaid became a partner. So when appellants executed the superseding contract of November 16, 1955, which contained an identical paragraph 2, they well knew the business policy and

practices followed by the Company in its interpretation and performance of the contract. This business policy was contrary to the interpretation for which appellants now contend. Appellee Company pled ratification. Having executed the new contract with such knowledge, appellants have in effect ratified the Company's interpretation. Henshaw v. Texas Natural Resources Foundation, 147 Tex. 436, 216 S.W.2d 566, 571; Teders v. Mercantile Nat. Bank, Tex. Civ.App., 235 S.W.2d 485; Simpson v. McCain, Tex.Civ.App., 295 S.W.2d 258.

Furthermore we think appellants' interpretation would make the contract violative of the anti-trust laws of the State of Texas. Arts. 7426–7428 and 7437, Vernon's Ann.Civ.St., Patrizi v. McAninch, 153 Tex. 389, 269 S.W.2d 343; Henderson Tire & Rubber Co. v. Roberts, Tex.Com.App., 12 S.W.2d 154; American Brewing Ass'n v. Woods, Tex.Civ.App., 215 S.W. 448.

In their eleventh point raised for the first time in their Supplemental Brief, appellants argue that the contracts are contracts of agency, not of sale, therefore they are not violative of our anti-trust statutes. In support of this allegation they point to paragraph 14 of the contract of September 23, 1953. This paragraph provides that title shall remain in the Company until the entire purchase price shall have been paid in cash to the Company. Such a conditional sales agreement, which by its own terms shows that it was entered into to secure payments of the purchase price, is declared by statute to be a chattel mortgage. Art. 5489, V.A.C.S.; Minnehoma Financial Co. v. Johnson, 152 Tex. 386, 258 S. W.2d 78; Sussdorf v. Lee, Tex.Civ.App., 2 S.W.2d 344.

Other provisions also make it plain that the contracts are contracts of sale, not of agency. The contracts make no attempt to control the retail prices to be charged by appellants. They do provide that appellants shall pay all transportation, insurance and storage charges on the goods and shall be liable for all taxes. They also provide

that appellants, when requested by the Company, will execute and deliver a note, or notes for the unpaid purchase price of goods ordered and shipped to them; and that, when requested by the Company, appellants will furnish a guaranty of payment for goods shipped, and on demand will furnish collateral security on past-due notes or open account. Appellants' eleventh point is overruled.

■ In their tenth point appellants argue that if the contracts are void because they violate the anti-trust laws of this State, as contended by appellees, appellants under their pleadings are still entitled to recover damages for fraud in the inducement, procurement and execution of the contracts.

We see no merit in appellants' tenth point for these reasons: (1) appellants have not pled for damages because of fraud in the procurement of the contracts; (2) by executing similar superseding contracts after knowledge of the alleged fraud, appellants will not now be heard to cry out that they were fraudulently induced to execute the first contract; and (3) if the contracts are violative of our anti-trust laws, they are void and unenforceable. Henderson Tire & Rubber Co. v. Roberts, Tex.Com.App., 12 S.W.2d 154. When parties have entered into a contract to violate the law, courts will not grant relief to either of them, but will leave them where it finds them. Appellants' tenth point is overruled.

■ It is undisputed that appellee W. D. Barry was at all times involved herein acting as a disclosed agent of Minneapolis-Moline Company. It is undisputed that the contracts were not even discussed with him by appellants prior to the dates the contracts were signed. We find no evidence of a conspiracy between Barry and the Company. It is not denied that Barry acted within the scope of his authority as agent. Under such circumstances he has not individually incurred any responsibility or liability to appellants. Synatzske v. Gorham, Tex.Civ.App., 211 S.W.2d 391;

Foster v. Hackworth, Tex.Civ.App., 164 S.W.2d 796; 2 Tex.Jur.2d 602.

The judgment of the trial court is affirmed.