**SHAW EQUIPMENT COMPANY,**
Appellant,

v.

**HOOPLE JORDAN CONSTRUCTION COM-PANY, Inc., et al., Appellees.**

No. 17070.

Court of Civil Appeals of Texas.

Dallas.

March 29, 1968.

Rehearing Denied June 7, 1968.

Charles A. Girand of Brundidge, Fountain, Elliott & Churchill, Dallas, for appellant.

Robert H. Thomas of Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellees.

DIXON, Chief Justice.

Appellant Shaw Equipment Company, a corporation, brought suit against appellees Hoople Jordan Construction Company, Inc. and Hoople Jordan individually on a combination note and conditional sales contract executed by appellees in connection with the purchase of a heavy equipment road construction machine called a duo-stabilizer. Appellant will hereinafter be referred to as Shaw and appellees as Jordan.

Jordan filed an answer and also a cross-action asking cancellation of the note and mortgage on the grounds of breach of warranty, false representations and failure of consideration.

Shaw replied by supplemental petition, alleging that for fourteen months prior to execution of the purchase agreement and note and mortgage Jordan had used the machine under the terms of a lease agreement; that during such time Jordan had become fully aware of the machine's performance capabilities; and by reason thereof had waived any right to claim false representations or warranties and was estopped to assert that the consideration for the note had failed.

A jury returned a verdict finding that (1) prior to the execution of the conditional sales agreement Shaw's agents represented that the duo-stabilizer would satisfactorily perform the work for which it

was intended, (2) which representation was of a material fact; (3) was relied on by Jordan; (4) Jordan was reasonably justified in relying on said representation; (5) the representation was false, (6) Jordan was injured by the falseness; (7) Jordan would not have signed the contract were it not for the false representation; and (8) the value of the use of the duo-stabilizer from May 1964 to February 1966 was $9,894.24.

No issues were submitted or requested with reference to Jordan's plea of failure of consideration. No issues were submitted or requested with reference to Shaw's pleas of waiver and estoppel.

Shaw's motions for instructed verdict and for judgment *non obstante veredicto* were overruled. Based on the jury verdict judgment was rendered for Jordan setting aside and rescinding the note and conditional sales contract, declaring title to the machine to be vested in Shaw, divesting Jordan of any interest or claim in it, and further decreeing that Shaw take nothing against Jordan.

## FACTS

In 1964 Jordan had several contracts with the State for road construction in East Texas. The soil encountered contains clay material which has to be broken down in order to make it more granular so that the roadbed can stand the pressure put upon it by the weight of the road surface materials and the heavy traffic. It is necessary to aerate the soil, then mix it with oil after which it is packed with rollers. The function of the duo-stabilizer is to dig up the soil, aerate it, and mix it with oil.

In 1964 the machine in question was put through a four-hour demonstration in Newton County on a road which Jordan had under construction. The machine performed satisfactorily. On May 4, 1964 the parties signed a written lease contract whereby for an indefinite period of time Jordan agreed to pay Shaw rental at the rate of six cents per square yard of soil mixed by the stabi-lizer, based on State Highway Department monthly progress reports.

On the same day he signed the lease agreement, May 5, 1964, Jordan signed a purchase option agreement. This instrument gave Jordan the option to purchase the duo-stabilizer at a purchase price of $28,370, the price to be reduced by the total amount of rentals paid by Jordan to Shaw under the terms of the lease and rental agreement. This option agreement expressly provided that the machine would be purchased *"in the condition it is at the time of exercising such option, and without warranty of any kind by the Seller."* (Emphasis ours.)

Jordan testified that prior to the time of his execution of the lease agreement and the option to purchase Burns, Shaw's salesman, represented to him that the duo-stabilizer would perform Jordan's job to his satisfaction; that it was as good or better than anything on the market; that it was the answer to everybody's dreams in the stabilization business; and that it would answer everybody's prayers in East Texas for stabilization. Jordan also testified that Burns told him the machine would dig and mix soil to a depth of fourteen inches. This would be a big advantage, for most stabilizers could not dig to a depth greater than six inches. If it was necessary to dig deeper most machines had to do it in two operations.

From the first, according to Jordan, the stabilizer failed to perform satisfactorily. Every day Jordan had trouble with it; a bearing would go out, or a gear go out. He told Shaw about it and Shaw on various occasions sent a service man to work on the machine and even had a factory representative flown to the scene of the operations. But "they hadn't found the answer to fixing it yet." When the blade was plowing seven or eight inches under ground the bearings were in the dirt, which would cause the bearings to wear out.

Notwithstanding these difficulties Jordan kept the machine and used it from time to

time when weather conditions permitted on jobs in Newton, Henderson and Liberty Counties. Between May 5, 1964 and July 27, 1965, a period of over fourteen months, the machine dug and mixed approximately 100,000 yards of soil. During that time Jordan paid Shaw the sum of $4,872.24 as rentals on the machine. By July 27, 1965 Jordan was in arrears on rental payments.

On July 27, 1965 Jordan exercised its option to purchase the machine. The corporation signed a note for $30,022 payable in monthly installments of $1,250 each and signed also a conditional sales contract. Jordan became the owner of the legal title to the machiné subject to a chattel mortgage in favor of Shaw. The arrears in rental payments were brought forward and included in the amount of the note. The conditional sales contract provides: "Dealer sells to Purchaser and *Purchaser buys and acknowledges receipt of the above described property in good order and condition.*" It also contains this provision: *"Said property is sold in its present location and condition and without warranty of any kind."* (Emphasis ours.)

Jordan himself testified that he read the conditional sales contract before signing it and that he signed it voluntarily.

Jordan testified that C. C. Crawford, Shaw's Assistant Sales Manager, told him to go ahead and sign the purchase papers and that he, Crawford, would see that Shaw treated him right and that the machine would be made to perform the job. There is no evidence that Crawford at the time he made this statement, did not intend to perform it.

It is obvious and undisputed that Jordan purchased the stabilizer and executed the note and mortgage with full knowledge of its performance capabilities and limitations.

Jordan presented as an expert witness H. W. Murphy, a machinery salesman for other and competitive lines of stabilizers. But Murphy's testimony, though critical in some particulars of the machine here in controversy, was not especially helpful to Jordan's cause. For Murphy admitted that this stabilizer would satisfactorily perform stabilization work in Henderson and Newton Counties where Jordan was using it if a man "had time enough to work the job out with the machine."

In February 1966 Jordan returned the machine to Shaw's yard in Dallas. He did so after a talk with Mr. Chitty, Shaw's Credit manager. He says he told Mr. Chitty that Jordan had been rained out of jobs it then had to work on, and that the machine then needed some work to be done on it and Jordan couldn't keep up the payments with it raining so that the machine couldn't work. Jordan also talked at this time to McDougal, Shaw's shop foreman, about repairs and modifications. McDougal told him Shaw would put a new design on the stabilizer but Shaw "wouldn't stand behind it."

On June 4, 1966 Shaw instituted this suit for foreclosure. Jordan was behind several months on its installment payments.

Hoople Jordan himself testified that it was "when they sued me" that he decided not to take the machine back. This would mean that though he had possession of the machine from May 4, 1964 to June 4, 1966 (a period of more than two years), had used it many times and had full knowledge of its alleged defects, he did not decide to attempt to rescind his contract until he was sued after he had fallen behind on his monthly installment payments.

### OPINION

■ The alleged representations of Burns, the salesman, that the machine would perform to Jordan's satisfaction, that it was as good or better than anything on the market, that it was the answer to everybody's dreams in the stabilization business, and that it would answer everybody's prayers in East Texas for stabilization, are all expressions of opinion, or are dealers' talk, or puffing, which do not come within the

category of fraudulent misrepresentations. 25 Tex.Jur.2d 679, 689; 37 C.J.S. 241.

If we be mistaken as to the above holding in respect to any of the alleged representations, we nevertheless hold, for reasons hereinafter stated, that as a matter of law the alleged representations even if false at the time they were made, do not entitle Jordan under the undisputed circumstances, to cancel and rescind the contract of purchase and the note and mortgage.

■ The undisputed facts show that Jordan at the time he signed the contract of purchase and the note and mortgage had full knowledge that the alleged representations were false. He had given the machine a thorough tryout over a period of fourteen months under the terms of the rental agreement prior to his signing the purchase agreement and note and mortgage. His own testimony shows that he knew what the machine could do and could not do. He knew the machine would not dig and mix soil to a depth of fourteen inches. Yet with full knowledge of the performance limitations of the machine and whatever defects it may have had, he decided to purchase it and obligate himself to pay for it. It is undisputed that though he had kept possession and had the use of the machine for more than two years he did not seek to cancel and rescind his contract until after he was sued because of his being in arrears in his payments. The rule is well established that one may not successfully sue for cancellation of a contract on the ground of false representations when at the time he signed he knew the truth about the facts misrepresented. Chapapas v. Wiesehan, 163 S.W.2d 847 (Tex.Civ.App., San Antonio 1942, writ ref'd w. m.); Powell v. Pioneer Building & Loan Ass'n, 111 S.W.2d 764 (Tex.Civ.App., Waco 1937, writ dism'd); Wells v. Burroughs, 65 S.W.2d 396 (Tex.Civ.App., Texarkana 1933, no writ); Biggs v. Doak, 259 S.W. 665 (Tex. Civ.App., El Paso 1924, no writ); Davis v. Moye, 155 S.W. 962 (Tex.Civ.App., Galveston 1913, no writ); Hawkins v. Wells, 17 Tex.Civ.App. 360, 43 S.W. 816, 1897,

writ ref'd); 10 Tex.Jur.2d 339, 25 Tex. Jur.2d 645, 653; 37 C.J.S. Fraud § 27, p. 267.

■ The rule seems especially applicable if one induced by fraudulent misrepresentations to enter into a contract, thereafter, with knowledge of the deception, enters into a new contract in respect to the transaction. He thereby relinquishes his right to recover because of the misrepresentation. Dallas Farm Machinery Co. v. Minneapolis-Moline Co., 324 S.W.2d 578, 581 (Tex.Civ. App., Dallas 1959, no writ); Teders v. Mercantile Nat. Bank, 235 S.W.2d 485, 488 (Tex.Civ.App., Dallas 1950, writ ref'd n. r. e.); 26 Tex.Jur.2d 40.

It is to be remembered that Jordan himself testified that he read the conditional sales contract before he signed it and that he signed it voluntarily. This is significant in view of the fact that the contract expressly stipulated that " * * * *Purchaser* * * * *acknowledges receipt of the above described property in good order and condition"*; and *"Said property is sold ,in its present location and condition and without warranty of any kind."* (Emphasis ours.) Thigpen v. Locke, 363 S.W.2d 247, 253 (Tex.Sup.1963); Courseview, Inc. v. Phillips Petroleum Co., 158 Tex. 397, 312 S.W. 2d 197, 204–205 (1958); Indemnity Ins. Co. of North America v. W. L. Macatee & Sons, 129 Tex. 166, 101 S.W.2d 553 (1937).

■ In its first and second points on appeal appellant Shaw asserts that the court erred in overruling its motions for instructed verdict and for judgment *non obstante veredicto*. We agree with appellant. The grounds specified by appellant in its motion for instructed verdict and its motion for *non obstante veredicto* were as follows:

1. The undisputed evidence shows that Jordan purchased the equipment involved pursuant to an "as is, where is" contract after using the machine under a lease and rental agreement for more than fourteen months.

2. Jordan had a superior knowledge of the condition of the equipment when it signed the note and conditional sales contract and is thereby precluded and estopped from claiming misrepresentations, breach of warranty, or failure of consideration.

3. The right of rescission was waived by Jordan as a matter of law by its entry into the conditional sales contract and note, having full knowledge of all representations and warranties made under the lease and rental agreement.

4. Jordan has not tendered back the equipment purchased under the instruments referred to above.

5. Jordan has not pled or proved any damages.

Waiver is ordinarily a question of fact, but where the material facts are undisputed waiver may become a question of law. We think that under the undisputed facts in this case Jordan as a matter of law waived its right to rescind the contract. Smith v. Northwest National Bank, 403 S.W.2d 158 (Tex.Civ.App., Texarkana 1966, writ ref'd n. r. e.) ; Foster v. L. M. S. Development Co., 346 S.W.2d 387, 395 (Tex. Civ.App., Dallas 1961, writ ref'd n. r. e.) ; Dallas Farm Mach. Co. v. Minneapolis-Moline, Co., 324 S.W.2d 578, 581 (Tex.Civ. App., Dallas 1959, no writ) ; Teders v. Mercantile Nat. Bank, 235 S.W.2d 485, 488 (Tex.Civ.App., Dallas 1950, writ ref'd n. r. e.) ; Miller v. Deahl, 239 S.W. 679, 686 (Tex.Civ.App., Amarillo 1922, writ ref'd) ; 60 Tex.Jur.2d 200.

Appellant's first and second points are sustained.

In its third, fifth and seventh points appellant Shaw asserts that there is no evidence to support the jury's answers to Special Issue No. 3 (that the false representation was relied on by Jordan), Special Issue No. 4 (that Jordan was reasonably justified in relying on the representation), and Special Issue No. 7 (that but for such representation Jordan would not have signed the conditional sales contract). We agree with appellant.

Appellant did not object to the submission of the issues on the ground of no evidence. However, appellant did urge said ground in its amended motion for new trial. Under Rule 279, Texas Rules of Civil Procedure, this presents the contention for our consideration here. Dial Temp Air Conditioning Co. v. Faulhaber, 340 S. W.2d 82 (Tex.Civ.App., Dallas 1960, writ ref'd n. r. e.) ; Meek v. Bower, 333 S.W.2d 175 (Tex.Civ.App., Houston 1960, no writ) ; Collier v. Hill & Hill Exterminators, 322 S. W.2d 329, 73 A.L.R.2d 1141 (Tex.Civ.App., Houston 1959, no writ) ; Hodges v. Plasky, 300 S.W.2d 955 (Tex.Civ.App., Austin 1957, writ ref'd n. r. e.) ; Hicks v. Fredericks, 286 S.W.2d 315 (Tex.Civ.App., Beaumont 1955, no writ) ; Myers v. Minnick, 187 S.W.2d 941 (Tex.Civ.App., San Antonio 1945, no writ) ; Myers v. Crenshaw, 134 Tex. 500, 137 S.W.2d 7 (Tex.Comm'n App. 1940) ; Shary v. Helmick, 90 S.W.2d 302 Tex.Civ.App., San Antonio 1935, writ dism'd) ; 3 Tex.Jur.2d 404, 407.

The material facts have been set out earlier in this opinion and need not be repeated here. Suffice it to say that the undisputed material facts in this case disclose a situation in which the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove the vital facts—the vital facts being (1) that the false representation was relied on by Jordan, (2) that Jordan was justified in relying on the representation, and (3) Jordan would not have signed the conditional sales contract but for such representation. Calvert, " 'No Evidence' and 'Insufficient Evidence' ", 38 Tex.L.Rev. 361 (Par. 2(b) under "No Evidence Points", pp. 362–363).

We have already stated the legal principles which we believe bar Jordan as a matter of law from obtaining a judgment rescinding and cancelling the note and conditional sales contract. Appellant's third, fifth and seventh points are sustained.

Appellant's fourth, sixth and eighth points charge that the evidence is insufficient to support the jury's answers to the issues in question. If we be mistaken in invoking the "no evidence" rule we would sustain appellant's fourth, sixth and eighth points.

We also hold that there is no evidence to support Jordan's plea of a total failure of consideration. And Jordan did not plead partial failure or offer any evidence as to the extent of a partial failure of consideration.

Since we believe the court should have sustained appellant's motion for instructed verdict and its motion for judgment *non obstante veredicto*, the judgment of the trial court will be reversed and judgment rendered in favor of Shaw for its debt as evidenced by the note and for foreclosure of its chattel mortgage lien as evidence by the conditional sales contract.

Reversed and rendered.

BATEMAN, J., not sitting.

## ON MOTION FOR REHEARING

In our main opinion we said, " * * * the undisputed material facts in this case disclose a situation in which the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove vital facts." In their motion for rehearing appellees say they do not understand the above statement. We shall amplify our statement.

What we had in mind was the application of the parol evidence rule. In Hubacek v. Ennis State Bank, 159 Tex. 166, 317 S.W. 2d 30 (1958), our Supreme Court said, "The parol evidence rule is not a rule of evidence at all, but a rule of substantive law. * * * When parties have concluded a valid integrated agreement with respect to a particular subject matter, the rule precludes the enforcement of inconsistent prior or contemporaneous agreements." We be-

lieve the facts in this case bring it squarely within the rule quoted above.

It is true that the Supreme Court in *Hubacek,* following the rule announced in Sections 240(1) (a) and 240(1) (b) in Restatement of the Law of Contracts, Vol. 1, held the evidence in controversy raised a fact question under the circumstances of that particular case, and the judgment of the Court of Civil Appeals was reversed. But as we see it under the undisputed material facts in this case the two above cited sections in the Restatement are not applicable.

The undisputed material facts, as pointed out in our main opinion, are that the conditional sales contract contains these provisions: "Dealer sells to Purchaser and *Purchaser buys and acknowledges receipt of the above described property in good order and condition. * * * Said property is sold in its present location and condition and without warranty of any kind."* (Emphasis ours.) Jordan himself testified as follows:

"Q Now, this is the Plaintiff's Exhibit No. 3, the conditional sale installment contract and the promissory note, it indicates on the face that you signed this individually and as an officer of Hoople Jordan Construction Company, Incorporated—excuse me—on or about the 27th day of July, 1965, * * * *—

"A Yes, sir."

\*     \*     \*     \*     \*     \*

"Q Once again, did you read that over before you signed it?

"A Yes, sir.

"Q All right. You weren't coerced into signing this, * * * were you?

Let the record indicate that he shook his head in the negative.

You signed this voluntarily?

"A Yes, sir.

"Q All right. There are some witnesses names appear on this instrument, Frances Minshew, who is she, sir?

"A She is my secretary."

In our opinion the oral representations and warranties on which appellees rely are altogether inconsistent with the above quoted provisions, therefore we are barred by rules of law from giving said alleged parol representations and warranties any weight.

A case in which the facts are similar in some respects to the facts in this case is Avery Co. of Texas v. Harrison Co., 267 S. W. 254 (Tex.Comm'n App.1924). In the Avery case it was held that the seller of farm machinery was not bound by the verbal representations of its agent, which representations were inconsistent with the terms of the written contract of sale. See also Miami Petroleum Co. v. Neal, 333 S.W. 2d 876 (Tex.Civ.App., El Paso 1960, writ ref'd n. r. e.); Kingsbery v. Phillips Petroleum Co., 315 S.W.2d 561 (Tex.Civ.App., Austin 1958, writ ref'd n. r. e.).

In 88 C.J.S. Trial § 155 p. 302 (Note 15 (1)) it is said, "Rule that terms of written instrument cannot be varied by parol is substantive law, not merely a rule of evidence, and the legal effect cannot be avoided even though parol evidence be admitted without objection." In support of the above statement the following Texas cases are cited: Steve Lynn Motor Co., Inc. v. Pavelka, 371 S.W.2d 928 (Tex.Civ.App., Waco 1963, no writ); Patton v. Crews, 264 S.W.2d 467 (Tex.Civ.App., Fort Worth 1954, writ ref'd n. r. e.); Ross & Sensibaugh v. McLelland, 262 S.W.2d 205 (Tex.Civ.App., Fort Worth 1953, writ ref'd n. r. e.); Great Nat. Life Ins. Co. v. Presley, 129 S.W.2d 730 (Tex. Civ.App., Amarillo 1939, writ dism'd).

In the trial court appellees relied on the holding of our Supreme Court in Dallas Farm Machinery Co. v. Reaves, 158 Tex. 1, 307 S.W.2d 233 (1957) as authority for admitting parol evidence in this case notwithstanding the terms of the written instrument. The holding in that case is not in point here. At page 241 of the opinion in the Reaves case it is stated that the chattel mortgage was executed *before* the purchaser discovered that the machinery would not perform as represented; and *immediately* after delivery of the machinery and discovery by the purchaser that it would not perform as represented, the purchaser repudiated the contract by stopping payment on his check and taking other steps looking toward rescission. That situation is a far cry from the situation in this case. Here we have a situation where Hoople Jordan himself testified that for about fourteen months before signing the mortgage appellees used the machinery and knew it would not perform as represented. And following the signing of the mortgage appellees kept the machinery and continued to use it for many months more. Then appellees sought to repudiate their contract only when they were sued because they were in arrears in their payments.

In Thigpen v. Locke, 363 S.W.2d 247, 253 (Tex.Sup.1963) our Supreme Court reaffirmed the principle that a party to a contract has an obligation to protect himself by reading what he signs and, without a showing of trickery. or artifice, may not avoid the instrument on the ground he did not know what he was signing. And a failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party. In support of this holding the Supreme Court cites Courseview, Inc. v. Phillips Petroleum Co., 158 Tex. 397, 312 S.W.2d 197 (1958) and Indemnity Ins. Co. of North America v. W. L. Macatee & Sons, 129 Tex. 166, 101 S.W.2d 553 (1937).

Appellees' motion for rehearing is overruled.

BATEMAN, J., not sitting.