Lipscomb, J.
The appellant employed the appellee as an overseer, and contracted to give him for his services as such a portion of the crop which should be made on the plantation. They mutually agreed before the crop was made and before the expiration of the year to separate, and the appellant agreed with the appellee to pay him $83 for his services for the time he had continued in his employment, a part to be paid in the rent of land, a part in corn, and part in money. The appellee sued the appellant for the year’s service, alleging that he had been ready and willing to perform his contract as originally entered into between the parties, but that the appellant had forced him to quit his service. The appellant in his answer set up the facts above staled; and these facts are substantially proved, as appears from the statement of facts, by the witnesses to the transaction and by the acknowledgment, of the appellee, although there are in proof loose declarations of the appellant made subsesequently to the time when the appellee quit his service that he would not have appellee about him; that he had intended to discharge him as soon as the crop was made; that he never would pay him, and similar remarks. Such declarations could not weigh anything against the facts that preceded the separation and what occurred at the time. It was in proof that the appellant had agreed with appellee to pay for him to one Russell sixty bushels of corn as Russell might want it; that a part of the corn had been received; and that appellee directed Russell not to receive any more, as be might wish to sue the appellant. It was in proof that $40 had been paid in rent. There was proof of a tender of the balance in money, but not with certainty as to the time when the tender was made, whether before or after the commencement of this suit. The appellee admits in his answer to an interrogatory filed and propounded to him that lie had agreed to accept $85 for his services while in the employment of the appellant, but says that it was on certain conditions that were never performed. He does not allege what those conditions were, nor has he shown them in proof; consequently his admission stands unqualified as to his agreement to accept the $85.
Ou the trial""the court charged the jury “that in order to substitute a new contract for the original one" between the parties, the appellant must show that he had fully paid off and complied with the terms of that substituted contract or made a tender to do so; that if a new contract was made, by which the appellant was to pay part in corn and part in money, to constitute a tender of the corn, the appellant must show that he had set apart and separated the corn so to be paid;” which charge was excepted to by the appellant. It is believed that the court was mistaken in the law in both branches of the charge given. Ho principle of law is known that would restrain the parties from ‘making a new contract, if they thought proper to do so. And In this case there seems to be no difference in the degrees of the evidence of the contracts, as they were both verbal. When the now contract was made, if not fully complied with, the suit should have been founded on it, and not on the one for which it was substituted. It is not in the nature of a plea of accord and satisfaction, under which, to satisfy the contract, the accord and satisfaction must be proved, or the contract is left in full force.
In relation to the second branch of the charge, it may be admitted as a general principle of law that where one has undertaken to pay a specific article of *134 properly, and he wishes to discharge himself, he must set it apart so that it can be designated, so that on the one hand the party so bound would be discharged, and on the other the right to the properly so set apart would pass to the person for whom it was so set apart. (Dewees v. Lockhart, 1 Tex. R., 535.) But the charge, when applied lo the fact that the corn was to be delivered as it might be wanted, was certainly erroneous. If such was the contract, the appellant could not have discharged himself by so setting it apart, nor could lie have, been sued for the corn until after demand. The article being cumbersome, and no day of payment being stipulated, the rule of law in the case would be that it was to be delivered at the house of the appellant on demand, and, by the contract, in such quantities as would suit the party who was to receive it. Had there been a day for the, payment or delivery, all that could have been required of the defendant would have been proof of ability and willingness at the day. The rule laid down by the court as to separating and setting apart the property to be delivered in payment has been thought to be subject to some qualification arising from the particular kind of property. If it be such as not to lie susceptible of designation or distinction from other property of the same kind, or would be liable to almost inevitable destruction from so separating it and setting it apart, or if the so doing would be dangerous and inconvenient to the defendant — these considerations are supposed to form an exception to the general rule. This distinction was recognized by the Supreme Court of Alabama in the case of Armstrong v. Tait, (8 Ala. R., 685.) If the exception is allowable at all, it would seem that corn would come as clearly within it as any other description of property. I am therefore of the opinion that the rule laid down by the court below is not applicable to the supposed contract, and that if it had been, yet that the property in this case referred to is an exception to the rule.
There is another question presented by the appellant in this case, that from its importance as a point of practice at least merits the consideration of this court. The plaintiff in the court below obtained a commission to take the testimony of a witness in Houston county by interrogatories. This commission was addressed to any chief justice, notary public, or clerk of the District Court of Houston county. And it was executed before and returned by a person who assumes to be the deputy of the clerk. The defendant objected to the reading of the evidence so taken, on the ground that the deputy of the clerk was not competent to execute and return the commission under the statute. The 67th section of the act of 1846, regulating judicial proceedings, after directing in what way interrogatories shall be filed, proceeds : “ It shall be the duty of the clerk, upon application of the parties filing such interrogatories, his agent or attorney, to issue a commission directed to any chief justice, notary public, or clerk of the District Court residing in the county where it is stated in the notice such witness resides, requiring him to cause such witness to appear before him, and to take his answers under oath to such interrogatories,” &c. This statute imposes no liability on the person to whom the commission is directed for refusing or failing to execute and return the same. In its terms it is not different from tlie requisites provided for taking answers to interrogatories of witnesses residing without the State, in which ease tlie commission shall be directed “to any judge of any court of record within, the State or country where it is stated in the notice such witnes.' resides, requiring such judge to cause the witness to come before him,” &c. (See section 74.) The language of command is used in both cases, and no penalty imposed in either; and in the last there can be no question but that it would have been vain and nugatory to have imposed a penalty. The 20th section of tlie act organizing the District Courts requires the clerk “to give bond for tlie safe keeping of the records and the faithful discharge of the duties of his office. By the 21st section lie is authorized “to appoint one or more deputies by a written appointment under his hand and seal of the court, which shall be filed and recorded in the office of the clerk of the County Court.” The 23d section provides that the clerks elected or appointed and their deputies *135 shall have power to administer oaths in all cases where required in tiie discharge of tiie duties of their office. I believe tiie acts or parts of acts that I have noticed aro all the legislative enactments we have that can have any influence on the question under consideration. Do these or any of them make it an official duty of tiie clerk of the District Court, in his office as clerk, to execute and return a commission directed to him from another court to take testimony? I think not; no more than it is made the official duty of a judge of a court of record in another State to execute and return such commission. Botli have an official duty conferred on them; not however a duty of their respective offices, but the duty of commissioners for the particular occasion; and the office so conferred is a special delegation, not to be performed by deputy no more than any other special and limited trust. In my opinion the chief justice, the notary, or the foreign judge of a court of record would have fully as much authority in law to discharge''the duty by substitution. For errors in the charge of the court below, and also for error in the admission of the evidence returned by the deputy clerk of Houston county, I believe the judgment of the court below ought to be reversed and remanded to the court below for a new trial. And such is tiie judgment of the court.
Judgment reversed.