

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-413-CV

KAREN BAGHAEI D/B/A                                    APPELLANT
ARKADIA AUTO SALES

V.

APPONE, INC.                                           APPELLEE

------------

FROM COUNTY COURT AT LAW NO. 2 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. INTRODUCTION

Appellant Karen Baghaei d/b/a Arkadia Auto Sales appeals from the trial court's grant of summary judgment in favor of Appellee AppOne, Inc. In five issues, Baghaei argues that the trial court improperly granted summary judgment. We will reverse and remand.

---

[1] *See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Baghaei sells used cars. AppOne is a Louisiana corporation that facilitates the acquisition of vehicle financing for Baghaei's customers. In June 2004, Baghaei and AppOne (then known as Lazard Group, Inc. d/b/a Sterling Financial) entered into a "Used Car Dealer Agreement" in which AppOne agreed to provide or arrange for financing to customers who purchase vehicles from Baghaei. Baghaei made numerous representations and warranties in the 2004 Dealer Agreement, including that the documents prepared by her for submission by AppOne to lenders were "full, true, accurate, genuine, [and] complete"; that she "has independently investigated and verified that all information provided in the Credit File is full, true, accurate, correct, genuine and complete;" and that the "Customer has legal capacity to contract and to borrow; all signatures appearing in the Customer Obligation are authorized and genuine." Should any of the representations or warranties be false, Baghaei agreed to pay AppOne (upon demand) an amount equal to the sum of the outstanding principal, fees, and financing charges. The 2004 Dealer Agreement also provided that AppOne had the unilateral right to compel arbitration of certain disputes. Baghaei executed a personal guarantee "absolutely and unconditionally guarantee[ing]" payment of sums due to AppOne under the Dealer Agreement.

In March 2005, Baghaei submitted to AppOne documents relating to the proposed sale of a 2004 vehicle by Baghaei to an individual purporting to be Newel Sanders. The documents contained Sanders's personal information, were signed by Sanders, and included a copy of Sanders's Texas driver's license. Hibernia National Bank (now known as Capital One, N.A.) approved financing for the purchase of the vehicle, and a retail installment contract and security agreement executed by Sanders for the purchase of the vehicle were assigned to Hibernia, who loaned funds for the purchase of the vehicle.

In April 2006, Baghaei and AppOne entered into a new "Used Car Dealer Agreement." With only a few exceptions, the 2006 Dealer Agreement is substantially similar to the 2004 Dealer Agreement. The 2006 Dealer Agreement contains representations and warranties that are substantially similar to the representations and warranties set forth in the 2004 Dealer Agreement and permits either party to request arbitration. As she did in 2004, Baghaei personally guaranteed any sums due under the 2006 Dealer Agreement.

It was eventually discovered that the individual who signed the documents submitted by Baghaei for the purchase and financing of the 2004 vehicle was an imposter who had used Newel Sanders's identity to purchase

3

the vehicle.[2]  In January 2007, Capital One notified AppOne that AppOne was in default of their agreement.  Capital One also requested a payoff from AppOne in the amount of $13,607.77.  AppOne paid that amount to Capital One in exchange for an assignment of the installment contract and security agreement executed by the imposter Sanders.

In April 2007, AppOne notified Baghaei that it had received an "Affidavit of Fraud" from Newel Sanders in which he stated that he did not sign the documents related to the purchase of the 2004 vehicle.  AppOne indicated that Baghaei was in default of the "Used Car Dealer Agreement" for "the breach of various representations and warranties set forth in" the Dealer Agreement.[3]

AppOne later sued Baghaei for breach of the representations and warranties made in both the 2004 and 2006 Dealer Agreements.[4]  It sought

---

[2] The real Newel Sanders executed two affidavits that AppOne included with its summary judgment evidence:  one stating that he did not sign any of the documents associated with the purchase of the 2004 vehicle and another containing an attached copy of a completed Uniform Affidavit for Identity Theft.

[3] The representations and warranties that AppOne claimed Baghaei had breached include the following:  (1) Baghaei has independently investigated and verified that all information provided in the "Credit File" is full, true, accurate, correct, genuine, and complete and (2) the customer has legal capacity to contract and to borrow, and all signatures appearing in the Customer Obligation are authorized and genuine.

[4] In its second amended original petition, AppOne stated, "Under the terms and provisions found in both the June 2004 Dealer Agreement and the April 2006 Dealer Agreement, then, as well as in Defendant's Personal

4

damages in the amount of $13,607.77, interest, and attorneys' fees. AppOne later filed a motion for summary judgment that—according to AppOne—addressed both the claim under the 2004 Dealer Agreement and the claim under the 2006 Dealer Agreement. Baghaei did not file a response to the motion for summary judgment. On April 15, 2008, Baghaei filed a motion to compel arbitration pursuant to the 2006 Dealer Agreement. That same day, AppOne nonsuited its claim asserted under the 2006 Dealer Agreement. The trial court subsequently signed an order granting summary judgment in favor of AppOne on its "2004 Dealer Agreement claim."[5] The trial court awarded AppOne $13,607.77, prejudgment interest, and attorneys' fees.

---

Guaranty signed in connection with each of those Dealer Agreements, Defendant is and/or would be liable . . . for breaches of the above-described representations and warranties."

[5] The trial court also ordered that AppOne's claim under the 2006 Dealer Agreement is nonsuited and dismissed *without* prejudice.

## III. ARBITRATION

In her first issue, Baghaei argues that the trial court erred and abused its discretion by failing to refer the case to arbitration. Baghaei, however, acknowledges that the 2006 Dealer Agreement is governed by the Federal Arbitration Act. In Texas, a trial court's denial of arbitration under the FAA may be challenged only by mandamus and not by interlocutory appeal. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 779 (Tex. 2006) (orig. proceeding). Accordingly, Baghaei may not challenge the trial court's denial of her request for arbitration in this direct appeal. We overrule Baghaei's first issue.

## IV. JURISDICTION

In her second issue, Baghaei argues that the trial court lacked jurisdiction to enter the final summary judgment order because (1) the 2006 Dealer Agreement superseded the 2004 Dealer Agreement, (2) AppOne nonsuited its claim under the 2006 Dealer Agreement, (3) the 2006 Dealer Agreement governs all of AppOne's claims, and (4) AppOne took no action to reinstate its claim under the 2006 Dealer Agreement. Although we hold below that the 2006 Dealer Agreement superseded the 2004 Dealer Agreement, AppOne invoked the trial court's jurisdiction when it filed suit against Baghaei under the 2004 Dealer Agreement, and AppOne's claim under the 2004 Dealer Agreement remained pending after it nonsuited its claim under the 2006 Dealer

6

Agreement. We hold that the trial court had jurisdiction over the case when it signed the final summary judgment order. *Cf*. *Williams v. Nat'l Mortgage Co.*, 903 S.W.2d 398, 402 (Tex. App.—Dallas 1995, writ denied) (stating that if an opposing party has no claim for affirmative relief pending, a trial court's jurisdiction over a cause ends when a notice of nonsuit is given for the *only* pending claim for affirmative relief). We overrule Baghaei's second issue.

## V. LEGAL SUFFICIENCY OF APPONE'S SUMMARY JUDGMENT PROOF

In her third issue, Baghaei challenges the sufficiency of AppOne's summary judgment proof. She argues that the trial court erred by granting summary judgment in favor of AppOne on its claim under the 2004 Dealer Agreement because the 2006 Dealer Agreement superseded the 2004 Dealer Agreement.

Although Baghaei did not file a response to AppOne's traditional motion for summary judgment, it is well established that the trial court may not grant a summary judgment by default for lack of an answer or response to the motion by the nonmovant unless the movant's summary judgment proof is legally sufficient. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). Summary judgments must stand on their own merits, and the nonmovant's failure to answer or respond cannot supply by default the summary judgment

7

proof necessary to establish the movant's right to summary judgment because deficiencies in the movant's own proof or legal theories could defeat its right to judgment as a matter of law. *Rhone-Poulenc*, 997 S.W.2d at 223; *Clear Creek Basin*, 589 S.W.2d at 678; *Pierson v. SMS Fin. II, L.L.C.*, 959 S.W.2d 343, 348 (Tex. App.—Texarkana 1998, no pet.); *see Atlantic Mut. Ins. Co. v. Crow Design Ctrs.*, 148 S.W.3d 743, 744 (Tex. App.—Dallas 2004, no pet.) (stating that when the movant does not meet its burden of proof, the burden does not shift to the nonmovant to come forward with evidence raising a genuine issue of material fact). But while the nonmovant need not file an answer or response to the summary judgment motion, on appeal the nonmovant may only contend that the movant's evidence supporting the motion was insufficient as a matter of law or that the grounds in the motion do not dispose of all the claims in the case. *Rhone-Poulenc*, 997 S.W.2d at 223; *Clear Creek Basin*, 589 S.W.2d at 678.

Here, because Baghaei did not file a response to AppOne's motion for summary judgment, she is limited to contending that AppOne's evidence is insufficient as a matter of law to support the summary judgment. Indeed, Baghaei does just this in her third issue, wherein she argues that AppOne's summary judgment evidence—which includes both the 2004 Dealer Agreement and the 2006 Dealer Agreement—shows that the 2006 Dealer Agreement

8

superseded and replaced the 2004 Dealer Agreement. According to Baghaei, because the 2006 Dealer Agreement superseded the 2004 Dealer Agreement, and because AppOne nonsuited its claim under the 2006 Dealer Agreement, there was no basis for the trial court to grant AppOne any relief under the motion for summary judgment.[6] Accordingly, we will examine Baghaei's argument challenging the legal sufficiency of AppOne's summary judgment evidence.

The general rules of contract construction are well established. Under Texas law, if there is no ambiguity in a contract, its construction and meaning become a question of law for the court to determine. *Calpine Producer Services, L.P. v. Wiser Oil Co.*, 169 S.W.3d 783, 787 (Tex. App.—Dallas 2005, no pet.). Our primary concern when construing a written contract is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Heil Co. v. Polar Corp.*, 191 S.W.3d 805, 810 (Tex. App.—Fort Worth 2006, pet. denied). We examine and consider the entire writing in an effort to harmonize and give

---

[6] AppOne contends that Baghaei is prohibited from arguing that the 2006 Dealer Agreement superseded the 2004 Dealer Agreement because she failed to plead the affirmative defense of merger and failed to file any response to the motion for summary judgment. But Baghaei does not challenge the trial court's grant of summary judgment on any affirmative defense theory. She plainly challenges the legal sufficiency of AppOne's summary judgment proof.

effect to all provisions of the contract so that none will be rendered meaningless. *Coker*, 650 S.W.2d at 393. We presume that the parties to the contract intend every clause to have some effect. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); *XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 627 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). We give terms their plain, ordinary, and generally accepted meaning unless the contract shows that the parties used them in a technical or different sense. *Heritage Res.*, 939 S.W.2d at 121. The intent of the parties must be taken from the contract itself, not from the parties' present interpretation, and the contract must be enforced as written. *Calpine Producer Services, L.P.*, 169 S.W.3d at 787. The existence of a valid contract is an essential element of a breach of contract claim. *See, e.g., Winchek v. Am. Express Travel Related Services Co., Inc.*, 232 S.W.3d 197, 202 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

In the present case, under the subheading, "Effective Date," the 2004 Dealer Agreement provides in part that the Agreement "is deemed to be effective as of the date first written above." The "date first written above" is June 14, 2004. Like the 2004 Dealer Agreement, the 2006 Dealer Agreement is "deemed to be effective as of the date first written above," which is April 7,

2006. Under the subheading, "Entire Agreement," the 2006 Dealer Agreement states as follows:

> *This Agreement*, together with any Exhibits hereto and such Dealer Updates and letters as are from time to time provided, *shall constitute the complete agreement and understanding of the parties concerning the subject matter and supersedes all previous agreements and understandings relating to the subject matter*. The Agreement can only be amended by written agreement between Dealer and AppOne or by Dealer Updates as set forth in Section 3 herein. [Emphasis added.]

The 2006 Dealer Agreement also specifically provides that "[a]ll representations, warranties, and promises contained herein are expressly understood as applying to all Vehicles and/or Contracts *which presently have been purchased or which are to be purchased in the future pursuant to this Agreement*." [Emphasis added.]

The relevant language of the 2006 Dealer Agreement demonstrates that the 2006 Dealer Agreement superseded the 2004 Dealer Agreement. AppOne, however, nonsuited its claim against Baghaei under the 2006 Dealer Agreement, which left pending only its claim under the 2004 Dealer Agreement.[7] Because the trial court granted summary judgment in favor of

---

[7] In a brief filed with the trial court, AppOne stated that after nonsuiting its claim under the 2006 Dealer Agreement, its claim under the 2004 Dealer Agreement "remained pending before the Court." AppOne acknowledged that "Plaintiff's Motion for Summary Judgment on the 2004 Dealer Agreement claim is before the Court."

AppOne on its "2004 Dealer Agreement claim," the trial court granted summary judgment in favor of AppOne on a claim that is based on a superseded contract. It was error for the trial court to grant summary judgment in favor of AppOne on a claim based upon a superseded, invalid contract unless AppOne is somehow entitled to relief under the 2004 Dealer Agreement, as AppOne argues. *See Winchek*, 232 S.W.3d at 202; *Dallas Farm Machinery Co. v. Minneapolis-Moline Co.*, 324 S.W.2d 578, 580 (Tex. Civ. App.—Dallas 1959, no writ) (reasoning that second contract superseded first contract and stating that a contract that expressly cancels a prior contract is to be regarded as independent thereof, not as a continuation of the prior contract).

AppOne states that its claim against Baghaei is based upon "various representations and warranties concerning a transaction which occurred in 2005." It argues that the trial court appropriately granted summary judgment on the 2004 Dealer Agreement claim because the representations and warranties upon which AppOne sued were allegedly breached before the 2006 Dealer Agreement's effective date. We disagree, however, because although the 2006 Dealer Agreement became effective in April 2006, it specifically states that all representations and warranties contained therein are expressly understood by the parties to apply to all vehicles, contracts, or both that presently *have been* purchased. On the effective date of the 2006 Dealer

12

Agreement, the transaction between Baghaei and AppOne on behalf of the imposter Sanders involved a vehicle, contract, or both that *had been* purchased. Thus, the unambiguous language of the 2006 Dealer Agreement makes clear that the representations and warranties set forth in the 2006 Dealer Agreement cover AppOne's claims regarding the alleged breach of contractual representations and warranties that occurred in 2005.

Further, because the 2006 Dealer Agreement superseded the 2004 Dealer Agreement, the remedies available to AppOne in the 2006 Dealer Agreement superseded the remedies available to AppOne in the 2004 Dealer Agreement. On April 10, 2007, approximately one year *after* the 2006 Dealer Agreement became effective, AppOne notified Baghaei that she was in default of the "Used Car Dealer Agreement" and demanded that Baghaei pay $13,607.77. The only Dealer Agreement in effect in April 2007—when AppOne initiated remedial procedures for Baghaei's alleged breach of contract—was the 2006 Dealer Agreement. AppOne's remedies against Baghaei are accordingly governed by the 2006 Dealer Agreement.

13

AppOne additionally argues that the representations and warranties in the 2004 Dealer Agreement survived "any termination of the 2004 Agreement."[8] AppOne is referring to the following provision in the 2004 Dealer Agreement: "Each of the foregoing representations and warranties . . . shall survive the execution and delivery of this Agreement and the execution and delivery of the Contract documents[] and shall continue in full force and effect until all terms and provisions of the Contract have been fully performed." This language does not support AppOne's argument. It simply provides that the representations and warranties set forth in the Dealer Agreement remain enforceable even after AppOne has performed its contractual obligation of providing or arranging for financing to customers who purchase vehicles from Baghaei. This language is not relevant to the issue of whether AppOne is entitled to relief on its claim under the 2004 Dealer Agreement.

AppOne further directs us to a provision in the 2006 Dealer Agreement that states, "AppOne is willing to review credit applications received from time to time from *prospective Customers* of Dealer who wish to purchase new and used automobiles . . . from Dealer using financing *to be provided* by

_____

[8] AppOne specifically contends, "Even assuming hypothetically that some aspect of the 2004 Agreement was allegedly terminated in some way in 2006, the provisions in the 2004 Agreement concerning representations and warranties would survive, would remain in effect[,] and would be enforceable."

14

Lender . . . ." [Emphasis added.] AppOne argues that this language demonstrates that the representations and warranties in the 2006 Dealer Agreement apply only to future customers, not to past customers, including the imposter Sanders. Although we agree that the italicized language refers to future customers and future financing, we disagree that this language supports AppOne's position. The language merely addresses AppOne's obligation under the contract to review credit applications. The individuals who submit the applications are "prospective" customers because they have yet to purchase the vehicle from the dealer; hence the application for vehicle financing. Moreover, that the 2006 Dealer Agreement uses a number of terms in the future tense does not ipso facto suggest that the Agreement only applies post-April 2006, as AppOne seems to claim.

The sole dispute in AppOne's suit against Baghaei is based on a contract that has not been in effect since immediately before the 2006 Dealer Agreement became effective on April 7, 2006. AppOne's summary judgment evidence fails to demonstrate that AppOne was entitled to judgment as a matter of law. *See Rhone-Poulenc*, 997 S.W.2d at 223; *Clear Creek Basin*, 589 S.W.2d at 678. We hold that the trial court erred by granting summary judgment in favor of AppOne on the basis of an invalid, superseded contract. Accordingly, we sustain Baghaei's third issue.

15

Having sustained Baghaei's third issue, we need not consider her fourth and fifth issues, in which Baghaei complains that the trial court erred by prohibiting her from amending her pleadings in response to AppOne's partial nonsuit and by granting the summary judgment without considering mitigating evidence.  *See* Tex. R. App. P. 47.1.

## VI.  CONCLUSION

Having sustained Baghaei's third issue, we reverse the trial court's order granting summary judgment in favor of AppOne and remand the case for further proceedings.


BILL MEIER
JUSTICE

PANEL:  CAYCE, C.J.; DAUPHINOT and MEIER, JJ.

DELIVERED:  July 9, 2009

16